D & B Auto Sales *v.* Commonwealth of Pennsylvania, Department of State, State Board of Motor Vehicle Manufacturers, Dealers and Salesmen. D & B Auto Sales, Appellant.

114

Argued February 4, 1977, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*Gordon F. Harrington,* with him *Greenlee, Richman, Derrico & Posa; James B. Yelovich;* and *Kimmel, Rascona, Yelovich & Bowman,* for appellant.

*William J. Wheeler, Jr.,* Assistant Attorney General, with him *Robert P. Kane,* Attorney General, for appellee.

*Samuel M. Rosenzweig,* for amicus curiae, Pennsylvania Independent Automobile Dealers Association (PIADA).

OPINION BY JUDGE ROGERS, March 4, 1977:

The appellant partnership, D & B Auto Sales (D & B), a used car dealer, has been engaged in buying new automobiles from new car dealers for sale to the public. The vehicles acquired by D & B from the new car dealers have not been previously titled—that is, registered in the name of any owner in Pennsylvania or any other state. They have been registered in D & B's name when purchased by it. D & B has obtained "A" titles, designating it as the first or original owner. When D & B has sold the vehicles to customers, the latter have received "B" titles, the designation for a car having its second owner. The appellant has paid no Pennsylvania sales tax when acquiring the automobiles from the new car dealers but has collected the tax from its customers.

The State Board of Motor Vehicle Manufacturers, Dealers and Salesmen, after hearing, suspended D & B's license as a used car dealer for ninety days for violation of subsections 5(2)(xv) and 5(2)(xvi) of the Motor Vehicle Manufacturer's Dealer's and Salesmen's License Act[1] which state:

---

[1] Act of Sept. 9, 1965, P.L. 499, *as amended,* 63 P.S. §805(2)(xv) and (xvi).

The board shall have power and its duty shall be:

. . . .

(2) ... to suspend or revoke licenses issued by the board if after due notice and hearing the person charged is found guilty of committing or attempting to commit the following acts:

. . . .

(xv) Being a used car dealer as defined in 'The Vehicle Code,' who advertises or otherwise holds out to the public that such dealer is selling new motor vehicles.

(xvi) Being a used car dealer as defined in 'The Vehicle Code,' who sells motor vehicles which have never been registered or titled in Pennsylvania or any other state and on which a tax for education imposed by the 'Tax Reform Code of 1971,' has not been paid prior to such sale.

D & B asks that we set aside the Board's order, saying (1) that the Board was improperly constituted as required by statute and therefore without jurisdiction; (2) that there was not substantial evidence that the appellant advertised or held out to the public that it was selling new motor vehicles in violation of subsection xv; (3) that subsection xvi violates Article III, Section 3 of the Pennsylvania Constitution which prohibits the passage of a bill containing more than one subject; (4) that subsection xvi is an unwarranted exercise of the legislature's police power; (5) that subsection xvi denies the appellant equal protection of the laws; and (6) that subsection xv is so vague and indefinite as to create an unconstitutional violation of due process. None of these contentions have merit.

The appellant's challenge to the jurisdiction of the Board is based upon the asserted fact that two of its members who were used car dealers at the time of

their appointment have since acquired new car franchises, and that there were not two used car dealers on the ten person Board, as required by Section 3 of the Act, 63 P.S. §803.

The Supreme Court of Pennsylvania has said that quo warranto is the exclusive remedy for a challenge to the right to hold public office, and that such right cannot be challenged collaterally. The acts of *de facto* officials are binding until they are ousted by an action in quo warranto. *DeFranco v. Belardino,* 448 Pa. 234, 292 A.2d 299 (1972). "Recognizing that an unlimited right to question collaterally the title to office would impede the orderly operation of government, we have ruled that the official acts of one who acts under the color of title to an office should be given the same effect as those of a *de jure* official." (Emphasis in original.) *State Dental Council and Examining Board v. Pollock,* 457 Pa. 264, 267-68, 318 A.2d 910, 913 (1974). D & B is challenging the instant Board's action on the grounds that some individuals on the Board are not properly serving. This challenge falls squarely within the *de facto* doctrine.

Adverting next to D & B's assertion that the record does not contain substantial evidence that it has advertised or otherwise held itself out as selling new cars in violation of subsection xv, we note from the record that D & B sells new automobiles which it has purchased from new car dealers with new car stickers attached to the windows and with the manufacturer's new car warranty. Neither of these activities is unlawful; they do however provide evidence that D & B holds itself out to the public which comes to its place of business as selling new motor vehicles. Indeed, a member of the D & B partnership testified that purchasers of such vehicles could and probably did assume that they were buying new cars. We think the evidence sufficiently supports the Board's determina-

tion that D & B holds out to the public that it sells some new cars. While the appellant had at the time of the Board hearing discontinued its earlier practice of advertising that it has "brand new" cars for sale, it continues to advertise that it has current models with low mileage. D & B's present advertising practices do not offend subsection xv; they are, nevertheless, consistent with the activities at D & B's place of business, at which location the evidence shows that the appellant holds out that it sells new cars.

D & B next says that subsection xvi of the License Act violates Article III, Section 3 of the Pennsylvania Constitution, which provides that no bill shall be passed containing more than one subject, which shall be clearly expressed in its title. D & B's argument being overly ingenious is difficult to follow. It first correctly says that subsection xvi prohibits all sales by used car dealers of automobiles on which a sales tax has not been paid prior to the sale. It then also correctly says that Section 201(k)(8)(i) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7201(k)(8)(i), excludes from the meaning of the phrase "sale at retail" any transfer of personal property for the purpose of resale, thus rendering purchases for resale not taxable. It next argues that subsection xvi's stricture on sales by used car dealers of nontaxed cars bought for resale amends the Tax Reform Code's definition of "sale at retail" as including, rather than excluding, the transfer of motor vehicles from a new car dealer to a used car dealer for the purpose of resale. This effect, D & B says provides subsection xvi with two subjects, sales of cars and taxes. Of course, subsection xvi has no such effect. It does not say that transfers of new cars for the purposes of resale are sales and thus taxable; it simply says that used car dealers may not sell vehicles of a certain description, to wit, those not pre-

viously titled and on which no sales tax has been previously paid. It simply defines an activity forbidden to used car dealers. So far as subsection xvi is concerned, the appellant may sell cars titled in its name and on which sales tax has been paid prior to the sale.[2]

D & B says that subsection xvi is an improper exercise of the police power because the sale of automobiles does not affect the public interest and that, if it does, the prohibition of the sale of new cars by used car dealers bears no substantial relationship to the promotion of the public health, safety or welfare. The legislative findings and purposes are set out in Section 2 of the Motor Vehicle Manufacturer's, Dealer's and Salesmen's License Act, 63 P.S. §802. These include findings that the sale of new and used motor vehicles does affect the general economy, the public interest and the public welfare; and that it is necessary in these regards to license salesmen, manufacturers, dealers and others in order to prevent frauds, false and misleading advertising, and the bankrupting of dealers who might be caused to fail because of unfair practices in competition. The motor vehicle sales industry affects the public interest little, if any, less than the real estate sales business whose regulation was upheld in *Young v. Department of Public Instruction*, 105 Pa. Superior Ct. 153, 160 A. 151 (1932). D & B's dependence on *Hertz Drivurself Stations, Inc. v. Siggins*, 359 Pa. 25, 58 A.2d 464 (1948), is misplaced. There our Supreme Court struck down legislation subjecting the car rental business to the full regulatory jurisdiction of the Public Utility Commission. The distinction between that kind of regulation and the instant Act's requirement that used car dealers may not

---

[2] D & B's charge that State taxing authorities refused another dealer's offer to pay sales tax on a transfer to it of a new car is outside this record.

sell previously untitled and untaxed cars needs no elaboration. New car dealers and used car dealers are defined in Section 102 of The Vehicle Code, Act of April 29, 1959, P.L. 58, *as amended*, 75 P.S. §102. A principal difference in the definitions is that the new car dealer is (and the used car dealer is not) described as a person holding a contract with a manufacturer for the right to sell new vehicles. We can think of a number of reasons why the Legislature should wish that new cars be sold only by new car dealers, including the greater stability of new car dealerships because of the commitment they make to obtain new car franchises, and the interest of buyers of new cars in continued existence of the selling dealerships for repairs and for help in the enforcement of new car warranties.

D & B's attack on subsection xvi based on an asserted denial of equal protection of the laws is wholly without merit. It suggests that the classification for regulatory purposes of dealers and used car dealers is invidious and without purpose. In *Upper Moreland Township v. Ivymor Contractors, Inc.*, 20 Pa. Commonwealth Ct. 66, 341 A.2d 214 (1975), a borough parking ordinance classified vehicles as those under and those over three-fourth's of a ton in size. We upheld the classification, saying: "It is axiomatic that classification is a legislative question subject to judicial revision only as far as to see that it is founded on real and not merely artificial distinctions. If distinctions are genuine the court cannot declare the classification to be unlawful. Equitable Credit and Discount Co. v. Geier, 342 Pa. 445, 21 A.2d 53 (1941)." *Upper Moreland Township, supra* at 69, 341 A.2d at 215. The classification of new car dealers and used car dealers as defined in The Vehicle Code is genuine and not artificial. They serve different needs of buyers; they have different responsibilities, especially for manu-

facturer's warranties; and they require different regulation and protection.[3]

D & B's final argument is that subsection xv of The License Act is vague, indefinite, does not give fair notice of what acts will be punished and therefore violates due process. It complains that there is no adequate definition of "new motor vehicles" which subsection xv forbids it to offer for sale.

In Section 102 of The Vehicle Code a new motor vehicle is defined as "[e]very motor vehicle which is not defined as a reconstructed, rebuilt or used motor vehicle." In the same section a used motor vehicle is defined as "[a]ny motor vehicle which has been sold, bargained, exchanged, given away or title transferred, from the person who first acquired it from the manufacturer or jobber or dealer, and so used as to have become what is commonly known as second-hand within the ordinary meaning thereof." These definitions appear adequate to us; but should the appellant be still in doubt after reading The Vehicle Code, the clear and precise definition of what as a used car dealer it may not sell provided by subsection xvi might be instructive as to what it should not advertise for sale.

### ORDER

AND Now, this 4th day of March, 1977, it is Ordered that the adjudication and order of the State Board of Motor Vehicle Manufacturers, Dealers and Salesmen be and it is affirmed, and the instant appeal therefrom be and it is dismissed.

---

[3] In this connection we note that by regulation the Board has prohibited new car dealers from selling new cars for which they have no franchise. 49 Pa. Code §19.22(19).