397 A.2d 760

**COMMONWEALTH ex rel. Theresa PAULINSKI, James F. Rickard and Patricia K. Fitzpatrick**

v.

**Michael C. ISAAC and Schwartz-Sills Agency.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1978.

Decided Jan. 24, 1979.

Reargument Denied Feb. 28, 1979.

Mead J. Mulvihill, Jr., City Sol., Marvin A. Fein, Asst. City Sol., Pittsburgh, for appellant at Nos. 229 and 230.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, Asst. Dist. Attys., Pittsburgh, for appellant at Nos. 234 and 248.

Allen N. Brunwasser, Pittsburgh, for appellees at Nos. 229, 230, 234 and 248.

Mead J. Mulvihill, Jr., City Sol., Marvin J. Fein, Asst. City Sol., Pittsburgh, for appellees at Nos. 234 and 248.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

■ Relators Theresa Paulinski, James F. Rickard, and Patricia K. Fitzpatrick were brought before Magistrate Stephen P. Laffey of a magistrate court of the City of Pittsburgh for preliminary hearings on various misdemeanor

charges. Relators were held for court and released on bail. Relators then filed a petition for a writ of habeas corpus in the Court of Common Pleas of Allegheny County, naming their bonding company and its agents as defendants. The court of common pleas on September 25, 1975, directed the Commonwealth to respond and not to present relators' case to the grand jury until further order of the Court. On November 7, 1975, the court issued an order permitting the City to intervene. After a hearing, the court of common pleas, by opinion and order of October 5, 1977, held that the Constitution of 1968 abolished Pittsburgh magistrate courts and that no magistrate appointed after the adoption of the 1968 Constitution is a judicial officer. Magistrate Laffey was appointed after this time and the court therefore ordered the discharge of relators. The Commonwealth and the City of Pittsburgh appeal.[1]

Appellants assert that the court of common pleas erred both on procedural and substantive grounds. Their principal procedural objection is that relators' bailment leaves them without standing to challenge the court's jurisdiction. Further, appellants contend that the power of a court may be challenged only in a quo warranto proceeding and that petitioners have no remedy since quo warranto relief is exclusively prospective. On the merits, appellants argue that Pittsburgh magistrate courts were preserved by the Constitution of 1968, and are provided for by law.

We reject appellants' procedural claims, but hold that the Constitution of 1968 incorporates Pittsburgh magistrate courts into the unified judicial system of this Commonwealth. Accordingly, we vacate the October 5, 1977 order of the court of common pleas and remand for proceedings consistent with this opinion.

## I.

Appellants maintain that a collateral challenge to the lawfulness of an exercise of judicial power cannot be made

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(9) 17 P.S. § 211.202(9), (Supp.1978).

by a petition for a writ of habeas corpus, but can be made only in a quo warranto proceeding. While quo warranto has been characterized as the exclusive means by which to litigate title or right to public office, *D and B Auto Sales v. Commonwealth Dept. of State, State Bd. of Motor Vehicle Manufacturers, Dealers and Salesmen,* 29 Pa.Cmwlth. 113, 370 A.2d 428 (1977); *Leedom v. Thomas,* 473 Pa. 193, 373 A.2d 1329 (1977); *DeFranco v. Belardino,* 448 Pa. 234, 292 A.2d 299 (1972), the gravamen of the relators' complaint is unlawful custody as a result of an unconstitutional exercise of power. We have consistently held that the writ of habeas corpus may be used to test the legality of custody. E. g. *Commonwealth ex rel. Bryant v. Hendrick,* 444 Pa. 83, 280 A.2d 110 (1971), see *Commonwealth ex rel. Stevens v. Myers,* 419 Pa. 1, 213 A.2d 613 (1965), 2 Sm.L. 275, §§ 1 et seq., 12 P.S. §§ 1871 et seq. And although habeas corpus is not available until other remedies have been exhausted, e. g. *Bryant,* supra, the Great Writ has long been recognized as the only timely means of challenging the lawfulness of pre-indictment custody. *Commonwealth v. Hetherington,* 460 Pa. 17, 23, 331 A.2d 205, 209 (1975) ("The established and accepted method for testing a finding of a prima facie case pre-trial, within this jurisdiction, has been by a writ of habeas corpus"); *Commonwealth ex rel. Geisel v. Ashe,* 165 Pa.Super. 41, 42, 68 A.2d 360, 361 (1949) (challenge to pre-indictment proceedings will not be entertained post-conviction); *Commonwealth ex rel. Scolio v. Hess,* 149 Pa.Super. 371, 27 A.2d 705 (1942) (writ granted before trial where Commonwealth evidence insufficient to hold in custody those bound over for trial by a magistrate).

 Our concept of ordered law demands that a means of relief be available to relators unlawfully in custody. Since any pre-indictment jurisdictional defect will be corrected by the indictment or information procedure which follows, *Commonwealth v. Walker,* 243 Pa.Super. 388, 365 A.2d 1279 (1976) (allocatur denied), and because relief is unavailable to relators in a quo warranto proceeding, *State Dental Council and Examining Bd. v. Pollack,* 457 Pa. 264, 318 A.2d 910

(1974), the adoption of appellants' position would leave relators without any means of challenging jurisdictional defects in their preliminary hearing. We believe the writ of habeas corpus is suited to afford a remedy in these circumstances and, thus, reject appellants' claim.

■ Appellants, in addition, argue that since at the time the relators petitioned for relief they were released on bail, the issue of the lawfulness of their custody is moot and action on the merits of the petition is improper. By its very nature, a petition for a writ of habeas corpus is appropriate only where the relator is in "custody." See 2 Sm.L. 275, § 1, 12 P.S. § 1871; [1a] *Bryant,* supra. The relator need not be incarcerated, however, to meet this threshold requirement.

In *Commonwealth ex rel. Ensor v. Cummings,* 420 Pa. 23, 215 A.2d 651 (1966), this Court concluded, that a habeas corpus proceeding on behalf of a parolee is not moot, "since, while on parole, [the relator] is subject to conditions and restrictions which restrain h[is] freedom." *Ensor,* 420 Pa. at 26, 215 A.2d at 652. In *Commonwealth ex rel. Stevens v. Myers,* 419 Pa. 1, 213 A.2d 613 (1965), the Court found the "custody" requirement satisfied by a relator who collaterally attacked the validity of a final judgment of sentence even though he had not yet begun to serve the sentence imposed. *Stevens,* 419 Pa. at 20, 213 A.2d at 624. We noted,

"A refusal to permit the employment of the writ in the present circumstances would result in placing central emphasis on the history of the writ rather than upon its suitable employment in maintaining the balance 'nice, clear and true between the state and the accused.'"

The United States Supreme Court has concluded, similarly, that the "custody" requirement of the federal writ is satisfied by those not incarcerated as long as there are restraints on the petitioner's physical liberty, "not shared by the public generally." *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (parolee in "custody"); see *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36

**1a.** See, 42 Pa.C.S.A., § 6502 effective June 27, 1978.

L.Ed.2d 294 (1971) (petitioner released on his own recognizance pending execution of sentence in "custody").

 The record demonstrates that relators were "subject to conditions and restrictions which restrained [their] freedom," *Ensor*, supra, and which are "not shared by the public generally." *Jones*, supra. They were not free to leave the City of Pittsburgh and were subject to immediate incarceration if they did so. In addition, they were subject to appear in court at the demand, not only of the court, but also of their bonding company. We find the restraints on a petitioner bound over for court and released on bail sufficient to satisfy the custody requirement of a habeas corpus petition.[2]

**2.** Accord, e. g. *People v. Lent*, 187 Colo. 248, 529 P.2d 1317 (en banc, 1975); *In re Cox*, 3 Cal.3d 205, 90 Cal.Rptr. 24, 474 P.2d 992 (1970); *Lemme v. Langlois*, 104 R.I. 352, 244 A.2d 271 (1968); *In re Philipie*, 82 Nev. 215, 414 P.2d 949 (1966); *United States ex rel. Russo v. Superior Court of New Jersey*, 483 F.2d 7 (3d Cir.), cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973); *Marden v. Purdy*, 409 F.2d 784 (5th Cir. 1969); *Burris v. Ryan*, 397 F.2d 553 (7th Cir. 1968). But see, e. g. *People ex rel. McLaughlin v. Monroe*, 44 A.D.2d 575, 353 N.Y.S.2d 33 (1974); *Ex parte Putnam*, 456 S.W.2d 916 (Tex.Crim.App.1970); *Matysek v. United States*, 339 F.2d 389 (9th Cir. 1964), cert. denied, 381 U.S. 917, 85 S.Ct. 1545, 14 L.Ed.2d 437 (1965). Cases collected at 77 A.L.R.2d 1307.

We, thus, avoid the anomalous result of a petition for habeas corpus being available only to those who cannot afford bail. *Commonwealth v. Weinstein*, 177 Pa.Super. 1, 109 A.2d 235 (1954); *Commonwealth v. Lore*, 36 North. 271 (1961).

Appellants raise two other procedural claims. First, appellants question the authority of Judge Flaherty to preside over this criminal division proceeding, since he is permanently assigned to the civil division of the Court of Common Pleas of Allegheny County. Although judges must be assigned to a division of the court to which they are appointed or elected, Pa.R.J.A. 702.1, the Rules of Judicial Administration give the president judge of a court of common pleas the power temporarily to assign a judge from one division to another, "to expedite the business of the court." Pa.R.J.A. 702.2. By order, then President Judge Ellenbogen on February 27, 1976, assigned Judge Flaherty to this criminal docket case. Therefore, Judge Flaherty could properly hear this case.

Second, appellants argue that the trial court's order should be vacated because no habeas corpus proceeding should be brought on behalf of more than one relator. In support of this view they cite *Commonwealth ex rel. Panetta v. Hendrick*, 222 Pa.Super. 413, 294 A.2d 790 (1972) and *Ferree v. Douglas*, 145 Pa.Super. 447, 21 A.2d

## II.

We turn, therefore, to the merits of this appeal. The dispute between the parties essentially concerns the proper interpretation of section 21 of the Schedule to the Judiciary Article of the Constitution of 1968:

## "THE CITY OF PITTSBURGH

### INFERIOR COURTS

Section 21. Upon the establishment of magisterial districts pursuant to this article and schedule, and unless otherwise provided by law, the police magistrates, including those serving in the traffic court, the housing court and the city court shall continue as at present. Such magistrates shall be part of the unified judicial system and shall be subject to the general supervisory and administrative authority of the Supreme Court. Such magistrates shall be subject to the provisions of this article and schedule regarding educational requirements and prohibited activities of justices of the peace."

Appellants argue that this language preserves the inferior courts of the City of Pittsburgh, integrates them into the Pennsylvania judicial system and subjects magistrates sitting in accordance with this section "to the educational requirements and prohibited activities of justices of the peace."

472 (1941). *Ferree*, without authority, states that those confined under separate commitments cannot be discharged on one writ. *Panetta*, citing *Ferree*, reversed a decision which had reached the merits of a habeas corpus petition filed on behalf of more than one relator. No other jurisdiction follows the rule appellants would have us adopt. Indeed, a New York court has expressly rejected this proffered rule, *Supreme Court ex rel. Cardona v. Singerman*, 63 Misc.2d 509, 312 N.Y.S.2d 229 (Supreme Ct.1970), and the federal courts consistently reach the merits of habeas petitions brought on behalf of more than one relator. E. g. *Britt v. McKenney*, 529 F.2d 44 (1st Cir. 1976) (complaint of five plaintiffs seeking class action declaratory judgment treated as habeas corpus petition); *Burgener v. California Adult Authority*, 407 F.Supp. 561 (N.D.Cal.1976). We follow these jurisdictions and reject appellants' claim.

Appellees maintain, however, that section 12(d) of the Schedule to the Judiciary Article abolishes all future magistrate positions. Section 12(d) provides:

"Except for officers completing their terms, after the first Monday in January, 1970, no judicial function of the kind heretofore exercised by these officers, by mayors and like officers in municipalities shall be exercised by any officer other than the one justice of the peace elected or appointed to serve in that magisterial district."

Accordingly, appellees contend that the specific provisions of section 21, supra, merely permit those already serving as magistrates to remain in office, and establish additional requirements to be met by such "grandfathered" magistrates.

■■ Constitutional provisions are not to be read in a strained or technical manner. Rather, they must be given the ordinary, natural interpretation the ratifying voter would give them. *Commonwealth v. Harmon*, 469 Pa. 490, 366 A.2d 895 (1976); *Beradocco v. Colden*, 469 Pa. 452, 366 A.2d 574 (1976). We conclude that section 21 is naturally read as an exception to the general provisions of section 12(d).

Appellees' reading of sections 12 and 21 of the Judicial Schedule makes implementation of the educational requirements provision of section 12(b) of Article V problematic. Article V, section 12 establishes standards to be met by magistrates, aldermen, and justices of the peace prior to assuming office.[3] It would be, at least, unclear how to apply this standard to magistrates already in office, who do not meet the requirements and who may continue in office only until their current terms expire. Further, appellees constitutional interpretation would create a conflict between sec-

---

**3.** Article V, section 12(b) reads:

"Judges of the traffic court in the City of Philadelphia and justices of the peace shall be members of the bar of the Supreme Court or shall complete a course of training and instruction in the duties of their respective offices and pass an examination prior to assuming office. Such courses and examinations shall be as provided by law."

tions 12 and 21 of the Schedule. Sections 12(a) and (c) provide:

> "MAGISTRATES, ALDERMEN AND JUSTICES OF THE PEACE AND MAGISTERIAL DISTRICTS OTHER THAN IN THE CITY OF PHILADELPHIA
>
> Magistrates, aldermen and justices of the peace
>
> Section 12. An alderman, justice of the peace or magistrate:
>
> (a) May complete his term, exercising the jurisdiction provided by law and with the method of compensation provided by law prior to the adoption of this article;
>
> \* \* \* \* \* \*
>
> (c) At the completion of his term, his office is abolished."

On appellees' reading, section 12(c) absolutely abolishes the position of City of Pittsburgh magistrate after those whose terms are "grandfathered" serve out their terms of office. At the same time, section 12(a) unconditionally empowers those in office on January 1, 1970 to serve out their terms. But appellees' interpretation also forces one to read the first sentence of section 21 as allowing "grandfathered" magistrates to continue in office only as long as not "otherwise provided by law," and, thus, places a condition on their power to serve out their terms of office despite the clear language of Schedule Section 12(a) to the contrary. Appellants' interpretation of section 21 avoids a self-contradictory reading of the Constitution. "Grandfathered" magistrates, on their reading, are protected by section 12. Further, appellants argue that the language of section 21 of the Judicial Schedule contemplates that City of Pittsburgh magistrate courts may be eliminated by law, without constitutional amendment. On appellants' reading, those serving at a later date as Pittsburgh magistrates, should their jurisdiction ever be affected by law, will not be protected by the provisions of section 12.

Appellees also direct our attention to the fact that at various times during the course of the Constitutional Convention, judicial articles and amendments were introduced

which would have eliminated the Pittsburgh magistrate courts.[4] We do not dispute that the Journals of the Constitutional Convention of 1968 may demonstrate that section 21 of the Judiciary Schedule was the result of compromise. Such a fact, however, does not alter either the clear and unequivocal meaning of the original language or the Pittsburgh magistrate courts' amendment adopted by the Convention,[5] or the standard by which we must decide this case.

 Where, as here, we must decide between two interpretations of a constitutional provision, we must favor a natural reading which avoids contradictions and difficulties in implementation, which completely conforms to the intent of the framers and which reflects the views of the ratifying voter.

**4.** I *Journal of the Convention* 9, 126, 148, 152, 177, 183, 229, 312, 324, 402.

**5.** Indeed, our interpretation is fully supported by the history of the Constitutional Convention. The section on the inferior courts of Pittsburgh was originally and finally adopted by the Convention on February 22, 1968. That section provided:

"Inferior Court in Pittsburgh.—Upon the establishment of magisterial districts pursuant to this article and schedule, and unless otherwise provided by law, the traffic court and the housing court, the city court and the police magistrates in the City of Pittsburgh shall continue as at present. Such magistrates and courts shall be part of the unified judicial system of the Commonwealth and shall be subject to the general supervisory and administrative authority of the Supreme Court. Such magistrates shall be subject to the provisions of this article and schedule regarding educational requirements and prohibited activities of justices of the peace."

It was adopted by a vote of 128 to 5 (30 not voting). This was the final action of the Convention as a whole on this section of the Schedule to the Judiciary Act of the 1968 Constitution. The Style and Drafting Committee was authorized to modify editorially the amendment after its adoption by the Convention, but had "no authority to change the sense or purpose of any proposal referred to it." I *J. Constitutional Convention* 12, Rule 22. The amendment passed by the Convention provided that the City of Pittsburgh magistrate court was to continue until expressly eliminated. We note that the Pittsburgh Home Rule Charter, approved in 1974 and effective as of January 5, 1976, explicitly provides for their continued existence as a part of the unified judicial system of the Commonwealth. See generally, Pa.Const. art. IX, § 2, Act of April 13, 1972, P.L. 184, no. 62, 53 P.S. §§ 1–101 et seq. (1974).

Order of the Court of Common Pleas of Allegheny County of October 5, 1977, discharging relators vacated, and case remanded for proceedings consistent with this opinion.

Mr. Justice O'BRIEN and former Justice POMEROY did not participate in the decision of this case.