[J-34-2025] [MO:Wecht, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 19 MAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the York |
| | : | County Court of Common Pleas, |
| | : | Criminal Division, at No. CP-67-CR- |
| v. | : | 1632-2004, dated April 27, 2022. |
| | : | |
| | : | ARGUED: May 13, 2025 |
| ROBERT W. ARNETT, | : | |
| | : | |
| Appellee | : | |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE BROBSON**                    **DECIDED: March 26, 2026**

I concur with the Majority's conclusion that the Post Conviction Relief Act (PCRA), 42 Pa. C.S. § 9541-46, is not a viable mechanism to challenge the registration requirements of Subchapter I of the Sexual Offender Registration and Notification Act (SORNA II), 42 Pa. C.S. § 9799.51-.75. I write separately because the Court of Common Pleas of York County (Common Pleas Court) lacked subject matter jurisdiction to determine that Subchapter I was unconstitutional, and, in turn, this Court cannot reach that issue.

In 2004, a trial court sentenced Robert Arnett (Arnett) to serve an aggregate term of five to ten years of incarceration after he pleaded guilty to various criminal sexual offenses. Due to one of those charges, he was subject to lifetime registration as a sexual offender. Fifteen years after his judgment of sentence, Arnett filed with the Common Pleas Court a *pro se* petition, purportedly under the PCRA. Appointed counsel thereafter filed an "Amended PCRA Petition/Motion for Writ of *Habeas Corpus*." The Common

Pleas Court concluded that Subchapter I of SORNA II was unconstitutional. The Commonwealth appealed that decision, and the case ultimately came before us.

The Majority correctly concludes that Arnett could not utilize the PCRA to challenge his Subchapter I registration requirements. This conclusion, however, begs the questions: what vehicle may Arnett use to challenge the constitutionality of those requirements and what court would have jurisdiction over that matter? This Court has explained that "subject matter jurisdiction is the indispensable foundation of a court's power to adjudicate the issues in a particular case[, and, as such,] our Court will not consider the merits of a judgment of a lower court if that court lacked jurisdiction to render the judgment." *In re J.M.Y.*, 218 A.3d 404, 415 (Pa. 2019). Although courts of common pleas have jurisdiction over PCRA petitions, 42 Pa. C.S. § 9545(a), the Majority correctly concludes that the PCRA cannot be utilized to challenge Subchapter I of SORNA II. (Majority Op. at 16-17.) Accordingly, the Common Pleas Court did not have subject matter jurisdiction over the constitutionality question Arnett raised in his "so-called" PCRA petition.

Arnett, however, also captioned his amended petition as a "Motion for Writ of *Habeas Corpus*." Rather than evaluate whether *habeas corpus* is a proper vehicle to challenge SORNA II, Subchapter I registration requirements, the Majority, instead, merely decides that it will "leave [the] consideration of the viability of other non-PCRA mechanisms for another day." (*Id.* at 18.) The Majority then moves on to the merits of Subchapter I and concludes that *Commonwealth v. Torsilieri*, 316 A.3d 77 (Pa. 2024), "controls the disposition of this case[, such that, the Common Pleas C]ourt erred in ruling Subchapter I of SORNA II unconstitutional." (*Id.* at 25.) The Majority appears to wave off jurisdictional concerns because "Arnett asked only that the [Common Pleas C]ourt grant his petition and enjoin 'the enforcement of sex offender registration requirements on him.'"

(*Id.* at 4 n.18 (quoting Amended Petition, 3/5/2021, at 5 (unpaginated)).) When, however, a "lower court did not address the question of its jurisdiction to consider a petition and proceeded to decide its merits, our Court has the duty to determine whether that court had jurisdiction before deciding issues presented on appeal." *In re J.M.Y.*, 218 A.3d at 415 (citing *In re Petition of Acchione*, 227 A.2d 816 (Pa. 1967)).

The Common Pleas Court would have jurisdiction if *habeas corpus* was a proper vehicle for this claim. *See Commonwealth ex rel. Paylor v. Claudy*, 77 A.2d 350, 352 (Pa. 1951) (explaining concurrent jurisdiction that this Court, the Superior Court, and courts of common pleas have over *habeas corpus*). I do not, however, believe that *habeas corpus* can be used to properly challenge SORNA II registration requirements. *Habeas corpus* is "a proper remedy to test the legality of a sentence being served." *Commonwealth ex rel. Stevens v. Myers*, 213 A.2d 613, 623 (Pa. 1965). Indeed, "[b]y its very nature, a petition for a writ of *habeas corpus* is appropriate only where the relator is in 'custody.'" *Commonwealth ex rel. Paulinski v. Isaac*, 397 A.2d 760, 763 (Pa. 1979). This Court has determined that an individual "need not be incarcerated, however, to meet this threshold requirement." *Id.* In certain circumstances, this Court has found that individuals were in custody for purposes of *habeas corpus* because they were "'subject to conditions and restrictions which restrained [their] freedom,' and which [were] 'not shared by the public generally.'" *Id.* (first alteration in original) (citations omitted). This Court, in *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020), was "persuaded [that] the requirements of Subchapter I are akin to probation." *Lacombe*, 234 A.3d at 623. Further, this Court has determined that probation is "unquestionably a restriction on [a] defendant's freedom." *Commonwealth v. Vivian*, 231 A.2d 301, 305 (Pa. 1967). Nevertheless, in the context of cases stemming from criminal convictions, I find no Pennsylvania caselaw that permits individuals to use

*habeas corpus* when they are not serving a sentence or facing imminent incarceration. *See, e.g.*, *Commonwealth v. Hess*, 414 A.2d 1043, 1046-47 (Pa. 1980) ("The restraints on an accused bound over for court and released on bail are sufficient to satisfy the custody requirement of a habeas corpus petition."); *Commonwealth ex rel. Ensor v. Cummings*, 215 A.2d 651, 652 (Pa. 1966) (explaining that *habeas corpus* petition was not moot because defendant was "still 'in custody' of the parole board . . . while on parole"). Although Subchapter I may be *similar* to probation, probation *is* a criminal sentence. *See* 42 Pa. C.S. § 9721; *Commonwealth v. Fiore*, 491 A.2d 276, 280 (Pa. Super. 1985) (explaining that "Sentencing Code makes it clear that a term of 'probation' is a sentence" (emphasis omitted)). Subchapter I, as the Majority notes, is *not* a criminal punishment. (Majority Op. at 3.) Accordingly, I am unconvinced that *habeas corpus* was a proper vehicle for Arnett to challenge the SORNA II registration requirements.

As neither *habeas corpus* nor the PCRA were proper mechanisms in this case, I emphasize that Arnett sought "relief from his obligation to register as a sex offender with the Pennsylvania State Police [(PSP)]." (Tr. Ct. Op. at 2 (unpaginated) (emphasis omitted).) Indeed, the Common Pleas Court's conclusion was that "[Arnett] does not need to continue to register as a sex offender with [PSP] because such registration" violates the Pennsylvania Constitution. (*Id.* at 3.) Arnett and the Common Pleas Court discuss PSP because PSP maintains the SORNA II registry. 42 Pa. C.S. § 9799.67. I agree with Justice Wecht, in his concurring and dissenting opinion in *Lacombe*, when he presumed that an individual "contesting the constitutionally of his or her inclusion on that registry, and seeking removal therefrom, could seek [relief] in the Commonwealth Court." *Lacombe*, 234 A.3d at 644 (Wecht, J., concurring and dissenting). Indeed, such an action would have to be brought within the Commonwealth Court's original jurisdiction. *See* 42 Pa. C.S. § 761(a)(1), (b) (granting Commonwealth Court exclusive original

jurisdiction over "all civil actions or proceedings . . . [a]gainst the Commonwealth government"). Arnett's challenge to Subchapter I's constitutionality, made after he finished serving his sentence, seeks to eliminate his registration requirements with PSP and is, therefore, more appropriately addressed as an action against PSP.[1] As the Commonwealth Court has exclusive jurisdiction over actions against the Commonwealth, including actions against PSP, the Common Pleas Court lacked jurisdiction to decide whether Subchapter I's requirements violate the Pennsylvania Constitution.[2] This Court's decision to address the constitutionality issue when the Common Pleas Court itself lacked jurisdiction to do so merely compounds the error.

---

[1] The Majority understands my position as suggesting that "a writ of *mandamus* . . . is the proper mechanism when a party files an action against . . . PSP seeking removal from SORNA's registry." (Majority Op. at 20.) I do not conclude that a writ of *mandamus* is the only proper action; rather, I simply conclude that Arnett's action, whatever that may be, seeks to obtain relief from PSP and, as such, should be pursued against PSP.

[2] The Majority finds fault with this conclusion because it believes that "neither SORNA[ II]'s text or history, nor this Court's precedents, require all claims for SORNA [II] relief be funneled exclusively into one particular court." (Majority Op. at 20.) I agree, SORNA II is largely silent on the matter. The plain language of Section 761(a)(1), (b) of the Judicial Code, however, clearly indicates that the exclusive jurisdiction for "all civil actions or proceedings . . . [a]gainst the Commonwealth government[,]" with listed exceptions that are not applicable here, belongs to the Commonwealth Court. 42 Pa. C.S. § 761(a)(1), (b). The silence of the General Assembly in SORNA II regarding how an individual can make constitutional challenges against his registration requirements after he has served his sentence cannot supersede the clear and express mandate that the Judicial Code provides.

Further, contrary to the Majority's contention, 42 Pa. C.S. § 9799.59 (a)(2), which explicitly provides a mechanism for individuals to be exempted from their registration requirements by filing a petition in the sentencing court, does not support the broader contention that legal challenges to SORNA II, made after individuals have served their sentences, properly lie in the courts of common pleas. The fact that the General Assembly expressly placed jurisdiction in the courts of common pleas for this exemption mechanism magnifies the point that the General Assembly could have also vested, but did not, challenges to SORNA II registration requirements within the courts of common pleas' jurisdiction. Again, without such an express carve-out from the Commonwealth Court's exclusive jurisdiction under the Judicial Code, the courts of common pleas lack jurisdiction over such a civil action against PSP.

The Majority acknowledges that "some flexibility" should be permitted because the "sexual offender laws frequently undergo vast and substantial revision." (Majority Op. at 13.) The Majority further explains, however, that such flexibility "does not license courts or litigants to disregard jurisdictional or constitutional limitations." (*Id.*) It is odd then that the Majority justifies its decision to not fully consider subject matter jurisdiction by relying heavily on its "adher[ence] to the protocol" from *Lacombe*. (*Id.* at 19 n.81.) I believe the Majority ought to heed its own warning that courts, including this Court, cannot disregard jurisdictional or constitutional limitations; this includes the requirement that a lower court must have subject matter jurisdiction over an issue in order for this Court to determine its merits.[3] *M & P Mgmt., L.P. v. Williams*, 937 A.2d 398, 402 (Pa. 2007) ("[W]e cannot provide finality to a judgment when a court lacked subject matter jurisdiction over the underlying dispute."). The Common Pleas Court did not have subject matter jurisdiction over Arnett's request for his registration requirements to be enjoined, and, therefore, this Court cannot rule on the matter.

This Court should vacate the Common Pleas Court's determination based on the conclusions that neither a PCRA nor a *habeas corpus* petition were proper vehicles for Arnett's constitutionality challenge and that exclusive jurisdiction over this matter belongs to the Commonwealth Court.[4] Although such a determination might only act as a "delay

---

[3] The Majority emphasizes that questions regarding subject matter jurisdiction "*may* be raised at any time in the course of the proceedings, including by a reviewing court *sua sponte*." (Majority Op. at 18 n.77 (emphasis in original) (citation omitted).) The Majority's focus on the word "may" in our caselaw to imply that a reviewing court has discretion to ignore subject matter jurisdiction is troubling and diminishes how fundamental subject matter jurisdiction is to ensuring that judicial decisions have the force and effect of law. *In re Admin. Ord. No. 1-MD-2003*, 936 A.2d 1, 5 (Pa. 2007) ("Whether a court has subject matter jurisdiction over an action is a fundamental issue of law . . . .").

[4] The Majority expresses reluctance to make a determination regarding whether *habeas corpus* was an appropriate vehicle in this case, in part, because "the principal parties do not dispute meaningfully the propriety of the use of *habeas corpus* petitions to challenge (continued…)

of the [possibly] inevitable" conclusion that Subchapter I is constitutional, no matter how "clear that [conclusion] may appear[,] it is less important than an improper exercise of powers not given." *In re Leopardi*, 532 A.2d 311, 315 (Pa. 1987). As it is improper for this Court to review the Common Pleas Court's merit determination, I caution that the

SORNA [II]." (Majority Op. at 19.) Further, the Majority claims to "exercise . . . restraint" by "declin[ing] to review th[is] matter further." (*Id.*) I question the Majority's commitment to restraint when it addresses the merits of the lower court's decision without tackling the threshold question of whether the lower court had subject matter jurisdiction in the first place. The lack of clear subject matter jurisdiction of a lower court is an issue that this Court ought to opine on in order to dispose of an appeal. Additionally, I note that subject matter jurisdiction cannot "be conferred by consent of the parties and a defect of such jurisdiction may not be waived." *In re Admin. Order No. 1-MD-2003*, 936 A.2d at 6. It does not then matter if parties briefed or argued the issue.

The parties, however, did, at least in part, address jurisdiction and *habeas corpus*. When this Court asked for supplemental briefing, it specifically asked the parties to address whether the initial matter was properly brought under the PCRA and, "[i]f so, [whether] the [Common Pleas C]ourt [had] jurisdiction to consider the merits of [Arnett]'s facially untimely PCRA petition?" (Order, 08/20/2024.) In response, both the Commonwealth and Arnett discussed how the PCRA was not a proper vehicle for Arnett's challenge, but that Arnett could utilize *habeas corpus* and that the trial court had jurisdiction over the matter. (*See* Commonwealth's Supp. Br. at 2-7; Arnett's Supp. Br. at 6-10, 19-22.) At oral argument, the Commonwealth's attorney clearly understood that our request for supplemental briefing encompassed these issues when he began his argument by explaining that "there [were] two issues . . . requested by this Court to be briefed . . . . The first issue, which strictly speaking contains two sub-issues, is whether or not [Arnett] can bring this constitutional challenge under the [PCRA] and, if not, whether it can be brought under some other common law remedy, and whether the [Common Pleas Court] properly had jurisdiction to rule on it." (Oral Arg., 05/13/2025.) This was in addition to the numerous questions that this Court lodged regarding *habeas corpus* and jurisdiction.

The Majority may be placing undue emphasis on its desire for adversarial briefing and argumentation. Although it is true that the Commonwealth and Arnett both agreed that *habeas corpus* was an appropriate vehicle and that the Common Pleas Court had jurisdiction, the Office of the Attorney General (OAG), who this Court invited to participate as *amici*, specifically took the opposite view. (OAG's Amicus Br. at 5.) The Majority highlights that the OAG wrote "only briefly" on the matter. (Majority Op. at 19.) Nevertheless, these matters were presented to this Court, and, even if they were not, this Court cannot ignore a lower court's lack of subject matter jurisdiction.

Majority's decision, beyond its determination that the PCRA is not a proper vehicle to challenge SORNA II, Subchapter I's registration requirements, is merely advisory.