**H. Beatty CHADWICK, Appellant**

**v.**

**John Douglas CAULFIELD, Appellee,**

**Barbara Crowther Chadwick, Intervenor.**

Superior Court of Pennsylvania.

Submitted April 21, 2003.
Filed Sept. 8, 2003.
Reargument Denied Nov. 12, 2003.

H. Beatty Chadwick, Appellant, pro se.

Christopher R. Mattox, Media, for appellee.

Kevin C. McCullough, Philadelphia, for intervenor.

Before: HUDOCK, POPOVICH, and CAVANAUGH, JJ.

CAVANAUGH, J.:

¶ 1 H. Beatty Chadwick ("Chadwick"), appeals from the denial of his ninth state petition for a writ of *habeas corpus*.[1] We affirm, holding that, as with Chadwick's previous petitions for a writ of *habeas corpus*, he has not presented any grounds for relief.

¶ 2 We reiterate the circumstances leading to Chadwick's present petition. In November 1992, Chadwick's wife, Barbara Crowther Chadwick ("Wife"), filed for divorce. At a February 1993 support conference, Chadwick informed the trial court that he had transferred $2,502,000 of the marital estate to Maison Blanche, Ltd., a Gibraltar partnership, purportedly to satisfy an alleged debt.

¶ 3 Chadwick's wife thereafter filed an emergency petition to freeze the martial assets. At the hearing on the petition, three things were discovered. First, that a Maison Blanche principal had returned $869,106 to a United States bank account in the name of H.B. Chadwick. These funds were used to purchase three annuity contracts in the name of H.B. Chadwick. Second, that $995,726.41 was transferred into a Union Bank of Switzerland account in the name of H.B. Chadwick. Finally, that Maison Blanche never received $550,000 in stock certificates that Chadwick claimed to have transferred to an unknown barrister in England for forwarding to Maison Blanche. The trial court granted the emergency petition to freeze the marital assets on April 29, 1994.

¶ 4 In May 1994, Chadwick liquidated the annuity contracts and deposited the proceeds in a Panama bank. On July 19, 1994, Wife filed an emergency omnibus petition for special relief. After a July 22, 1994 hearing, the trial court ordered Husband to return the $2,502,000 to an account under the court's jurisdiction, pay Wife's counsel fees, surrender his passport, and remain in Pennsylvania. We quashed Chadwick's appeal from this order as the order was interlocutory.

¶ 5 Chadwick failed to comply and Wife thereafter filed a petition to have him held in civil contempt. Contempt hearings were then scheduled for August 29, 1994, October 18, 1994, October 31, 1994. Chadwick failed to appear, although Chadwick's counsel was present at all three hearings. The trial court found Chadwick in civil contempt of the July 22, 1994 order and issued a bench warrant for his arrest on November 2, 1994. Chadwick appealed to this court from that order but we quashed, as the order was interlocutory in nature.

¶ 6 Chadwick fled the jurisdiction and was apprehended in Delaware on April 5, 1995. The trial court, following a hearing, found that Chadwick had the present ability to comply with the July 24, 1994 order, imprisoned him, and set bail at $3,000,000. Chadwick has not complied with the order

---

1. We note that the parties refer to the instant petition as Chadwick's eighth. If we include Chadwick's petition for *habeas* relief filed directly with our supreme court, this is Chadwick's ninth. We also note that the docket does not apparently reflect any filings between Chadwick's fourth *habeas* petition, filed September 22, 1995, and his sixth *habeas* petition, filed on May 22, 1996. To maintain consistency with the plethora of other decisions on this matter, we will continue to refer to this petition as Chadwick's ninth petition.

or posted bail. This court, in an unpublished memorandum decision, affirmed the lower court's finding of contempt. *See Chadwick v. Chadwick*, No. 1555 Philadelphia 1995, 454 Pa.Super. 700, 685 A.2d 1039, slip op. at 12 (1996) (*per curiam*), *appeal denied*, 548 Pa. 624, 693 A.2d 965 (1997) (affirming trial court's denial of Chadwick's petition to vacate the aforementioned November 2, 1994 order) [hereinafter *Chadwick I*].

¶ 7 Chadwick thereafter filed eight state petitions for *habeas* relief and five federal *habeas* petitions. All petitions were denied. Chadwick filed this ninth petition for a writ of *habeas corpus* on September 4, 2002. On October 3, 2002, Wife filed a petition to intervene.[2] That same day, Chadwick filed a petition requesting that the trial judge recuse himself. The trial court granted Wife's petition to intervene and denied Chadwick's petition for recusal. The trial court, after a hearing, dismissed Chadwick's petition for a writ of *habeas corpus* on November 7, 2002.[3] Chadwick, on November 14, 2002, filed an appeal and raises nine issues in his brief:[4]

I. Whether confinement for "civil" contempt fails to meet the requirements of law where the confinement order directs the confinement of the contemnor "until a further hearing is held" and contains no condition upon which the contemnor may be released?

II. Whether, assuming *arguendo* the existence of such a condition, the Record evidence is insufficient to establish beyond a reasonable doubt that the con-

temnor had the then present ability to comply therewith at the time of the contempt adjudication?

III. Whether such confinement without affording notice and trial by jury under a standard of proof beyond a reasonable doubt causes the contemnor a deprivation of liberty without due process of law?

IV. Whether such confinement without affording the contemnor the right to judicial review of the order which directed his confinement causes the contemnor a deprivation of liberty without due process of law?

V. Whether such confinement for the purpose of coercing the payment of money causes the contemnor a deprivation of liberty without due process of law?

VI. Whether confinement for the alleged violation of an order a court lacks jurisdiction to issue causes the contemnor a deprivation of liberty without due process of law?

VII. Whether confinement for over ninety months for "civil" contempt of an order to pay over money into court in a pending divorce action is unreasonable and a violation of due process by reason of its excessive length?

VIII. Whether the former spouse of a person who challenges the lawfulness of his confinement in *habeas corpus* has a legally enforceable interest so as to be granted the right to intervene as a party in such proceedings?

---

**2.** The trial court docket erroneously lists the filing date as September 4, 2002.

**3.** The recording equipment was not functioning at the time of the hearing, unbeknownst to the parties and the court. A statement in absence of a transcript was filed by Chadwick and approved by the trial court. *See* PA. R.APP.P. 1923.

**4.** We reordered Chadwick's issues to facilitate disposition. We acknowledge Chadwick's violation of PA.R.APP.P. 2116. *See also Commonwealth v. Lutes*, 793 A.2d 949, 955 n. 1 (Pa.Super.2002).

IX. Whether the hearing judge should not have recused himself where he had previously in open court expressed his disbelief of a party as to a matter of fact material to the instant proceedings and where by actions toward such party over an eight-year period a reasonable person could conclude that such hearing judge was unable to preside impartially?

¶ 8 Chadwick primarily alleges that the trial court erred in denying his petition for a writ of *habeas corpus*. A petition for a writ of *habeas corpus* "lies to correct void or illegal sentences or an illegal detention, or where the record shows a trial or sentence or plea so fundamentally unfair as to amount to a denial of due process or other constitutional rights, or where for other reasons the interests of justice imperatively required it." *Commonwealth ex rel. Butler v. Rundle*, 407 Pa. 535, 180 A.2d 923, 924 (1962) (citation omitted). Pursuant to title 42, section 6502 of the Pennsylvania Consolidated Statutes, "[a]ny judge . . . may issue the writ of habeas corpus to inquire into the cause of detention of any person or for any other lawful purpose." 42 Pa.C.S.A. § 6502(a). The writ, if issued, directs the restraining authority to produce the person and state the "true cause of the detention." 42 Pa.C.S.A. § 6504.

¶ 9 Traditionally, a writ of *habeas corpus* is a civil remedy that tests the legality of the detention. *See Commonwealth ex rel. Paulinski v. Isaac*, 483 Pa. 467, 397 A.2d 760, 762 (1979). The writ can "never be used as a substitute for an appeal to test the correctness of the administration of the law in connection with a commitment, but where such an order is beyond the power or jurisdiction of the tribunal entering it, the one thereby detained may be released on habeas corpus."

*Commonwealth ex rel. Shearston v. Keeper of County Prison*, 295 Pa. 252, 145 A. 130, 131 (1929) *(per curiam)* (citations omitted); *accord Commonwealth ex rel. Penland v. Ashe*, 341 Pa. 337, 19 A.2d 464, 466 (1941) (citations omitted). Precisely, "it is a collateral attack on the process or judgment constituting the basis of the detention." *Commonwealth ex rel. McGlinn v. Smith*, 344 Pa. 41, 24 A.2d 1, 5 (1942) (quoting *Goto v. Lane*, 265 U.S. 393, 401, 44 S.Ct. 525, 68 L.Ed. 1070 (1924)).

¶ 10 We note that this is Chadwick's ninth petition for a writ of *habeas corpus*. We first acknowledge that the doctrine of *res judicata* does not apply to *habeas* proceedings. *See Commonwealth ex rel. Bordner v. Russell*, 422 Pa. 365, 221 A.2d 177, 179 (1966) (citations omitted); *see also Sanders v. United States*, 373 U.S. 1, 8, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (wherein Justice Brennan noted, "[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged.").

¶ 11 "However, in order to discourage repetitive petitions and to provide a degree of finality, it is settled that, absent unusual circumstances or an intervening change of law, a court may refuse to entertain a contention which has been fully considered on a prior petition for collateral relief." *Bordner*, 221 A.2d at 179 (footnote and citations omitted); *see Commonwealth ex rel. Stevens v. Myers*, 419 Pa. 1, 213 A.2d 613, 615 n. 1 (1965) (collecting cases); *Commonwealth ex rel. Dandy v. Myers*, 409 Pa. 419, 187 A.2d 179, 180 (1963) *(per curiam)* (affirming dismissal of petition for writ for *habeas corpus* as petitioner raised the same issue in two previous petitions).[5]

---

5. *See also Sanders v. United States*, 373 U.S. 1, 15, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (noting, "[c]ontrolling weight may be given to

denial of a prior application for federal habeas corpus or [28 U.S.C.] § 2255 relief only if (1) the same ground presented in the subse-

Moreover, even a contention which was not previously considered on the merits may be foreclosed if the question could have been raised on a prior petition but was deliberately withheld in order to preserve a claim for a subsequent petition. The "waiver" imputed under such circumstances has traditionally been articulated in terms of an "abuse of the writ."

*Bordner*, 221 A.2d at 179–80 (citations omitted); *see also Commonwealth v. Cannon*, 442 Pa. 339, 275 A.2d 293, 295 (1971).

¶ 12 When a trial court grants or denies a petition for a writ of *habeas corpus*, we review that decision for a manifest abuse of discretion. *See Commonwealth v. Miller*, 787 A.2d 1036, 1038 (Pa.Super.2001), *appeal denied*, 568 Pa. 735, 798 A.2d 1288 (2002) (citation omitted). "Discretion is abused when the course pursued represents not merely an error of judgement, but where the judgement is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 625 A.2d 1181, 1185 (1993) (citation omitted).

¶ 13 Thus, we examine whether the trial court manifestly abused its discretion in denying Chadwick's petition for a writ of *habeas corpus*. *See Miller*, 787 A.2d at 1038. At the outset, we examine whether prior courts have fully entertained the claims that Chadwick presently raises, as this is his ninth petition for a writ of *habeas corpus*. *See, e.g., Bordner*, 221 A.2d at 179. For issues not previously entertained, we examine whether the court that originally found Chadwick in contempt lacked jurisdiction or improperly violated Chadwick's constitutional rights. *See Butler*, 180 A.2d at 924.

¶ 14 Chadwick, relying on case authority, first argues that the order of civil contempt is "legally improper" as it purportedly failed to state a condition for his release. The order in question states:

> H. Beatty Chadwick is held in Contempt of Court for willful violations of the Order of July 22, 1994. He is to be apprehended and incarcerated until a further hearing is held.

*Chadwick v. Chadwick*, No. 92–19535 (C.P. Delaware Nov. 3, 1994) (order dated November 2, 1994 holding Chadwick in contempt).[6] The July 22, 1994 order, which was filed on July 28, 1994, directed Chadwick to return the $2.5 million he trans-

quent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.") (footnote omitted); *Salinger v. Loisel*, 265 U.S. 224, 231, 44 S.Ct. 519, 68 L.Ed. 989 (1924) (collecting cases); *United States v. Kress*, 944 F.2d 155, 162 (3d Cir.1991), *cert. denied*, 502 U.S. 1092, 112 S.Ct. 1163, 117 L.Ed.2d 410 (1992) (stating, "an abusive use of the writ may be prevented and a prior refusal to discharge on a like application may be made the authority for a refusal on subsequent ones.") (quoting *Wells v. United States*, 158 F.2d 833, 834 (5th Cir.), *cert. denied*, 331 U.S. 852, 67 S.Ct. 1728, 91 L.Ed. 1860 (1947)). Of note is the *Salinger*

court's comment regarding successive petitions for a writ of *habeas corpus*:

> In practice the rules we here have outlined will accord to the writ of habeas corpus its recognized status as a privileged writ of freedom, and yet make against an abusive use of it. As a further safeguard against abuse, the court, if not otherwise informed, may on receiving an application for the writ require the applicant to show whether he has made a prior application, and, if so, what action was had on it.

*Salinger*, 265 U.S. at 232, 44 S.Ct. 519.

6. As previously noted, Chadwick filed an appeal from this order, which was quashed by this court as interlocutory on February 16, 1995.

ferred out of the United States. Chadwick also argues that even presuming that a condition exists, he lacked the ability to comply at the time the order was entered.[7]

¶ 15 Chadwick raised the aforementioned issues in his seventh state petition for *habeas* relief, filed directly with our supreme court on September 27, 1999. Chadwick raised the following issues:

(1) Chadwick's imprisonment for failure to comply with a court order was contrary to due process because he was unable to comply with the order; (2) Chadwick was incarcerated without a jury trial or the presumption of innocence, contrary to due process; (3) the summary nature of the contempt proceedings deprived Chadwick of due process; (4) the order of imprisonment was facially invalid because it failed to specify a condition upon the fulfillment of which Chadwick's imprisonment would terminate; (5) the denial of Chadwick's right to appeal the adjudication of contempt and sanction of imprisonment violated his due process rights; (6) imprisonment for the nonpayment of money was a deprivation of due process; (7) civil confinement in excess of 50 months is a deprivation of due process; (8) imprisonment for violation of a court order issued without jurisdiction was a deprivation of due process; and (9) Chadwick's imprisonment was and still is punitive rather than coercive.

*Chadwick v. Janecka,* No. Civ. 00–1130, 2002 WL 12292, 2002 U.S. Dist. Lexis 10 (E.D.Pa. Jan. 3, 2002), *reversed,* 312 F.3d 597 (3d Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 1914, 155 L.Ed.2d 828, 71 U.S.L.W. 3678 (2003) (No. 02–1346) (summarizing Chadwick's seventh state *habeas* petition). Issues one and two of the instant petition correspond with issues (1) and (4) of his seventh state *habeas* petition. Our supreme court denied Chadwick's seventh request for a writ of *habeas corpus. See Chadwick v. Goldberg,* No. 223 Misc.1999 (Pa. Feb. 8, 2000) (*per curiam*).

¶ 16 Similarly, Chadwick, in his sixth state *habeas* petition, alleged that the trial judge, after a hearing, erred by finding that he was able to "comply with the purging condition of his civil contempt." *Chadwick v. Hill,* No. 2192 Philadelphia 1996, slip op. at 4 (Pa.Super.Apr. 23, 1997) (*per curiam*) [hereinafter *Chadwick II*]. The *Chadwick II* court concluded, based on the record, that the trial court did not err, noting that Chadwick made no effort to comply with the court's July 22, 1994 order.

¶ 17 Moreover, Chadwick implicitly conceded that a condition for his release exists. Chadwick, after he was apprehended, filed an Emergency Petition to Vacate the Sanctions of Incarceration and Bench Warrant, which was denied by the trial court on April 21, 1995. Chadwick thereafter appealed to this court, raising, among other issues, a claim as to "whether he had the present ability to comply with this [*i.e.* July 22, 1994] order." *Chadwick I,* slip op. at 8. The *Chadwick I* court concluded that he had the ability to comply. *See id.*

¶ 18 Given Chadwick's presentation of these arguments in prior petitions for a writ of *habeas corpus* and given this court's and our supreme court's prior consideration of these arguments, we refuse

---

**7.** We note, however, that at the hearing on the instant petition, the trial court asked Chadwick "whether he intended to present evidence concerning his ability to comply with the Court's Order of July 22, 1994." Trial Order, Mar. 20, 2003 (approving statement in absence of transcript). Chadwick responded in the negative. *See id.* Thus, there is no evidence of his inability to comply.

to entertain his contentions. *See Bordner,* 221 A.2d at 179; *Stevens,* 213 A.2d at 615 n. 1; *Dandy,* 187 A.2d at 180. Our supreme court fully entertained Chadwick's first two arguments and found them lacking. The trial court did not manifestly abuse its discretion in denying Chadwick's ninth state petition for a writ of *habeas corpus.*

¶ 19 For the aforementioned reasons, we also find that our courts have previously entertained his third, fourth, fifth, sixth, and seventh issues. *Compare Chadwick v. Janecka,* No. Civ. 00–1130, 2002 WL 12292 (E.D.Pa. Jan.3, 2002), *reversed,* 312 F.3d 597 (3d Cir.2002), *cert. denied,* ── U.S. ──, 123 S.Ct. 1914, 155 L.Ed.2d 828, 71 U.S.L.W. 3678 (2003) (No. 02–1346) (summarizing claims raised in Chadwick's seventh state petition for a writ of *habeas corpus), with* Appellant's Br. at 4–5 (stating the issues raised by the instant *habeas* petition). Simply, issues (2), (5), (6), (7) and (8) of his seventh state *habeas* petition are identical to the instant third, fourth, fifth, sixth, and seventh issues. Moreover, Chadwick has raised some of these issues in previous state petitions for a writ of *habeas corpus.* Given that Chadwick is merely reiterating claims that our supreme court, as well as prior courts, have previously addressed, we similarly refuse to entertain these contentions. *See Bordner,* 221 A.2d at 179; *Stevens,* 213 A.2d at 615 n. 1; *Dandy,* 187 A.2d at 180. We find no manifest abuse of discretion in the trial court's denial of Chadwick's latest petition for a writ of *habeas corpus.*

¶ 20 We, however, comment on Chadwick's seventh allegation of error. In raising this issue in his sixth state petition for a writ of *habeas corpus,* Chadwick had urged the court to adopt a test showing that "incarceration may become punitive where 'the contemnor has shown there is no realistic possibility or [a] substantial likelihood that continued confinement will [ever] accomplish its coercive purpose.'" *Chadwick II,* slip op. at 5 (quoting *Morgan v. Foretich,* 564 A.2d 1, 4 (D.C.1989)). In rejecting this argument, the *Chadwick II* court stated:

> While it seems reasonable that at some point a temporal benchmark should be adopted to determine when contempt incarceration becomes impermissibly punitive we think that it is for our high court to make such a determination.

*Chadwick II,* slip op. at 6. Chadwick, however, did not appeal to our supreme court from the denial of his sixth petition for *habeas* relief.

¶ 21 Although we refuse to entertain Chadwick's seventh issue, we find our reasoning in *Chadwick II* persuasive. Lacking definitive guidance from our high court, we will not adopt any test that would define "when contempt incarceration becomes impermissibly punitive." *Id.*

¶ 22 Moreover, Chadwick, before a federal court, had argued "that the state courts failed to recognize that his confinement has ceased to be coercive and that, as a consequence, he cannot be held in custody any longer unless he is convicted and sentenced for criminal contempt." *Chadwick v. Janecka,* 312 F.3d 597, 607 (3d Cir.2002), *cert. denied,* ── U.S. ──, 123 S.Ct. 1914, 155 L.Ed.2d 828, 71 U.S.L.W. 3678 (2003) (No. 02–1346). The Court of Appeals for the Third Circuit holding "that the state courts' decision—denying *habeas* relief because Mr. Chadwick has the present ability to comply with the court order—was neither contrary to nor an unreasonable application of clearly established Federal Law, as determined by the Supreme Court of the United States" bolsters our determination that Chadwick's confinement is not unsound. *Id.* (internal quotation marks and citation omitted).

¶ 23 Finally, we address Chadwick's last two issues. Chadwick alleges that the trial court erred by allowing Wife to intervene. In support, Chadwick presents a highly technical argument that Wife lacks a legally enforceable interest in the proceedings and that Wife failed to demonstrate that if the writ was granted, she would suffer an injury. Chadwick also argues that the hearing judge in this matter erred in not recusing himself.

¶ 24 Wife first counters that Chadwick failed to properly appeal from the order granting Wife the right to intervene and the order denying Chadwick's motion to recuse. Wife, on the merits, argues that pursuant to PA.R.C.P. 2327(4), she has the right to intervene. Wife also submits that Chadwick failed to meet his burden that the hearing judge was biased, prejudiced, or unfair.

■■■ ¶ 25 We find it appropriate to address the merits of Chadwick's last two issues. *Cf. K.H. v. J.R.*, 826 A.2d 863, 871 (Pa.2003) (holding that "a notice of appeal filed from the entry of judgment will be viewed as drawing into question any prior non-final orders that produced the judgment."); *Krieg v. Krieg*, 743 A.2d 509, 511 (Pa.Super.1999) (noting that denial of a pretrial motion to recuse is not an appealable interlocutory or collateral order); *In re Manley*, 305 Pa.Super. 332, 451 A.2d 557, 559 n. 5 (1982) (stating, "[o]rdinarily, an order permitting intervention is interlocutory and not appealable.") (citations omitted).[8] Although Chadwick's notice of appeal only indicated an appeal from the order of November 7, 2002, that order flows from the trial court's prior grant of Wife's motion to intervene and the denial of Chadwick's motion to recuse.

¶ 26 On the merits, we find against Chadwick. With respect to Chadwick's objection to the trial court's grant of Wife's motion to intervene, we note that Chadwick raised a similar issue before the Court of Appeals for the Third Circuit. *See Chadwick*, 312 F.3d at 601. Chadwick argued that Wife, as intervenor in the court below, lacked standing to pursue an appeal.

¶ 27 The Third Circuit disagreed, finding that Wife clearly met all the requirements of standing, thereby allowing her, as intervenor, to proceed on appeal. Specifically, Wife demonstrated an injury in fact, causation, and redressability. *See id.* at 602. The Third Circuit noted that Wife has a direct financial interest in the outcome of the action. If a writ of *habeas corpus* was granted, the court reasoned:

> Chadwick will be released from jail and will be relieved of the pressure to return this money for equitable distribution. [Wife's] injury is unquestionably traceable to Mr. Chadwick's refusal to comply with the state court order under which he is being held. [The writ] would erase the effect of the state court order requiring the return of the funds and would significantly reduce [Wife's] share of the marital estate.

*Id.*

■■■ ¶ 28 In the courts of this Commonwealth, Pennsylvania Rule of Civil Procedure 2327(4) allows Wife to intervene if she has a "legally enforceable interest" by a resolution of this action. Similar to the Third Circuit, we find that Wife has a legally enforceable interest in the proceedings. If we were to reverse the trial court's denial of Chadwick's petition for a writ of *habeas corpus*, the end result would

---

8. We acknowledge that the *K.H.* decision was issued after the trial court's Rule 1925(b) decision.

be a greatly diminished marital estate, thereby injuring Wife. *See id.* Thus, Wife has an interest in ensuring the continued enforcement of the finding of contempt. Chadwick's argument that Wife has no legally enforceable interest in this proceeding must fail.

¶ 29 With respect to Chadwick's argument that the hearing judge erred by failing to recuse himself, we consider the following:

> It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

*Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 89 (1998) (citations omitted); *accord Commonwealth v. Tharp*, 830 A.2d 519, 2003 Pa. Lexis 1159 (Pa.2003).

¶ 30 Chadwick argues that the hearing judge has demonstrated an eight-year history of enmity against him. Wife disagrees.[9] Simply, Chadwick has failed to "produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Abu–Jamal*, 720 A.2d at 89 (citations omitted). Although the transcript of the hearing was unavailable, after examining the statement submitted in lieu of the transcript, we did not find an abuse of discretion warranting recusal. That the hearing judge ruled adversely to Chadwick's numerous petitions is not, on this record, a *per se* indication of the judge's partiality.

¶ 31 Upon our full entertainment of Chadwick's issues and arguments, we find that the trial court did not manifestly abuse its discretion in denying Chadwick's ninth petition for a writ of *habeas corpus*. Our courts have fully entertained, in Chadwick's prior petitions for a writ of *habeas corpus*, his first seven issues. We also note that Chadwick failed to present evidence of his alleged inability to comply with the trial court's July 22, 1994 order. Furthermore, lacking the guidance of our high court, we will not adopt any test that determines when incarceration for civil contempt becomes impermissibly punitive. Moreover, the trial court did not err in granting Wife's motion to intervene, as she has a legally cognizable interest in this proceeding. Finally, we find no abuse of discretion in the trial court's denial of Chadwick's motion to recuse.

¶ 32 Order affirmed.

**9.** We note in passing that Wife relied, in part, on a vacated decision. *See Mun. Publications, Inc. v. Snyder*, 322 Pa.Super. 464, 469 A.2d 1084 (1983), *vacated sub. nom. Mun.* *Publications, Inc. v. Court of Common Pleas of Philadelphia County*, 507 Pa. 194, 489 A.2d 1286 (1985).