**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Sheldon L. WEST, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 2004.
Filed Feb. 15, 2005.

Herbert A. Terrell, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., Robert A. Willig, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

BEFORE: ORIE MELVIN, BENDER and POPOVICH, JJ.

## OPINION BY BENDER, J.:

¶ 1 Sheldon L. West (Appellant) appeals from the January 12, 2004 order denying relief under his habeas corpus petition. The issue presented is whether Appellant's substantive due process rights were violated when the trial court recommitted Appellant to prison in 2002 following a 9-year delay in which Appellant remained mistakenly at liberty on an appeal bond stemming from a 1990 conviction. Under the circumstances presented in this case, in which the courts had on several occasions during the 9-year interval recognized the mistake, yet repeatedly failed to act by recommitting Appellant at those times, we conclude that Appellant's due process rights were violated when he was finally recommitted. Therefore, we reverse the order denying habeas corpus relief and order that Appellant be discharged from the sentence imposed on his 1990 conviction.

¶ 2 The unusual history of this case follows. On May 10, 1989, police arrested Appellant for selling cocaine. On May 11, 1990, Appellant appeared in the trial court before the Honorable Loren L. Lewis. On the same date, Judge Lewis both denied Appellant's motion to suppress physical evidence and tried Appellant without a jury, finding him guilty of possession of a controlled substance and possession of a controlled substance with intent to deliver. This is what we refer to herein as the 1990 conviction.

¶ 3 On July 17, 1991, the trial court sentenced Appellant to 27 to 54 months' imprisonment. The court later denied Appellant's motion for modification of his sentence. Appellant's mother hired David DeFazio, Esq., to file a direct appeal to this Court on Appellant's behalf. In addition to filing the appeal, Attorney DeFazio filed an application for release on bail pending appeal and, on September 11,

1991, the trial court granted Appellant release on $20,000 bail pending appeal. Appellant's mother posted her residence as surety on the appeal bond. Subsequently, on or about September 30, 1991, Appellant was released on bail pending appeal.

¶4 On June 10, 1992, this Court affirmed Appellant's judgment of sentence. Attorney DeFazio filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on March 24, 1993. Thereafter, on April 7, 1993, this Court remanded the certified record to the Allegheny County Clerk of Courts.

¶5 It is at this point in the history of this case that a procedural flaw occurred whereby the trial court failed to properly summon Appellant for service of his 1990 sentence. The usual procedure, necessary to commit a defendant upon remand of his case record following affirmance of his judgment of sentence, is found in Pa. R.A.P. 1763:

**Rule 1763. Vacation of Supersedeas on Affirmance of Conviction**

Unless otherwise ordered pursuant to this chapter, upon the remand of the record in any matter in which the judgment of sentence was affirmed a defendant who has been released pending appeal shall appear in the lower court at such time as the defendant may be there called, and shall be committed by that court until the defendant has complied with the original sentence, or any part thereof which had not been performed at the time the defendant was released pending appeal.

Pa.R.A.P. 1763. As noted in *Commonwealth v. Blair*, 699 A.2d 738, 740 (Pa.Super.1997), a case we discuss in detail below, Rule 1763 "specifies no time frame in which the trial court, upon receipt of a remanded record, must call a defendant to appear in court to begin his sentence."

Indeed, because of the lack of guidance on the subject, the *Blair* court called for a directive from the Pennsylvania Supreme Court "in order to clarify the time period in which a sentenced defendant's incarceration term should commence, including, perhaps, the ramifications of taking an appeal and being free on appeal bond." *Id.* at 743.

¶6 In any event, it is apparent that the procedure circumscribed by Rule 1763 was not followed in this case. No record evidence exists that Appellant or his bail surety were notified that Appellant's 1990 conviction was affirmed or that he should appear in court to commence serving his sentence. *See* N.T. Hearing, 11/4/02, at 24. Consequently, Appellant remained mistakenly at liberty on his appeal bond until, on April 24, 2002, *i.e.*, approximately 9 years after we remanded the record to the trial court, the oversight was recognized and acted upon by the Honorable Gerard M. Bigley [1] who issued an arrest warrant for Appellant. *See* Appellant's brief at 5. Finally, police arrested Appellant and, on April 24, 2002, Appellant was committed to serve his sentence on the 1990 conviction.

¶7 On October 21, 2002, following Appellant's committal to prison pursuant to Rule 1763, Appellant's present counsel, Herbert A. Terrell, Esq., filed a habeas corpus petition. The Honorable Kevin G. Sasinoski held evidentiary hearings on the matter on November 4, 2002, and on January 27, 2003. In his opinion filed pursuant to Pa.R.A.P. 1925(a), filed on June 30, 2004, Judge Sasinoski relied on the *Blair* case in denying Appellant relief. Thereafter, in August of 2004, Appellant was paroled and, according to his brief, he presently remains on parole. Appellant's brief at 7. Nevertheless, Appellant is proceeding with the instant appeal wherein he

---

1. Judge Lewis had passed away by this time.

challenges the legality of his committal on the 1990 sentence.[2]

■ ¶ 8 As indicated above, we find merit in the first issue Appellant raises in this appeal—*i.e.*, that the delay in his committal on the 1990 sentence violated his substantive due process rights.[3] However, before we can proceed with our analysis, we must determine whether the relief Appellant sought in his petition is suited for habeas corpus or whether a remedy exists under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–46. This threshold inquiry is necessary because if Appellant's claims could have been brought under the PCRA, then habeas corpus relief would be unavailable because the "PCRA subsumes the remedy of habeas corpus with respect to remedies offered under the PCRA[.]" *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 640 (1998). *See also* 42 Pa.C.S. § 6503(b) ("Where a person is restrained by virtue of sentence after conviction for a criminal offense, the writ of habeas corpus shall not be available if a remedy may be had by post-conviction hearing proceedings authorized by law."); *Commonwealth v. Reese*, 774 A.2d 1255, 1260 (Pa.Super.2001) ("The writ of *habeas corpus* is an extraordinary remedy that is available after other remedies have been exhausted or are ineffectual or nonexistent. The writ will not issue if another remedy exists and is available. The writ is not a substitute for appellate review.") (citations omitted).

¶ 9 The trial court, recognizing that the PCRA may be applicable, allowed Appellant to amend his habeas corpus petition to seek alternate relief under the PCRA. Now on appeal, the Commonwealth continues to argue that Appellant's petition falls under the PCRA and that we may, therefore, conclude that Appellant's petition is untimely and dismiss on that basis. *See* 42 Pa.C.S. § 9545 (providing for mandatory timeliness requirements of a PCRA petition).[4] We now examine both types of

---

**2.** The trend in the case law seems to suggest that a person need not be actually incarcerated to qualify for the requirement that he or she be in custody so as to be eligible for habeas corpus relief. In *Commonwealth v. Hess*, 489 Pa. 580, 414 A.2d 1043, 1046–47 (1980), our Supreme Court stated that "[t]he restraints on an accused bound over for court and released on bail are sufficient to satisfy the custody requirement of a habeas corpus petition." *See also Commonwealth ex rel. Paulinski v. Isaac*, 483 Pa. 467, 397 A.2d 760 (1979) (stating that habeas corpus applies only where relator is in custody, but relator need not be incarcerated to meet such threshold requirement). Similarly, where a parolee brought a petition for habeas corpus against warden of prison and parole board members, the petition as to the warden was moot because the parolee was no longer in his custody; however, the petition was not moot with regard to parole board members because they were responsible for imposition of restrictions on parolee's freedoms while on parole. *Commonwealth ex rel. Ensor v. Cummings*, 420 Pa. 23, 215 A.2d 651 (1966). These cases call into question some of the older cases that suggested a bright-line rule that habeas corpus relief was not available to persons on parole. *See, e.g., Commonwealth ex rel. Wood v. Maroney*, 207 Pa.Super. 191, 215 A.2d 286, 287 (1965) (affirming order dismissing habeas corpus petition where petitioner was on parole rather than in state's custody); *Commonwealth ex rel. Spader v. Burke*, 171 Pa.Super. 289, 90 A.2d 849, 850 (1952) (same).

**3.** Appellant also argues that his procedural due process rights were violated by the government's delayed committal, that counsel was ineffective for failing to inform him of the outcome of his direct appeal, and that the search and seizure underlying his 1990 conviction was illegal. Because we find merit in the first issue relating to substantive due process, we reverse the denial of habeas corpus relief on that basis and need not address these other issues.

**4.** If we were to conclude that the PCRA was the proper procedural mechanism to employ in this case, then, absent application of any of the exceptions to the PCRA's one-year filing requirement, the petition would be untimely

relief.

■ ¶ 10 The statute governing habeas corpus continues to exist at 42 Pa.C.S. §§ 6501—6505. The right to apply for habeas corpus relief is reserved for "any person restrained of his liberty within this Commonwealth[.]" *Id.* at § 6503(a). The court has the power to "issue the writ of habeas corpus to inquire into the cause of detention of any person or for any other lawful purpose." *Id.* at § 6502(a). The "writ of habeas corpus is used to determine whether a petitioner is entitled to an immediate release from an unlawful confinement." *Commonwealth ex rel. Powell v. Rosenberry*, 435 Pa.Super. 337, 645 A.2d 1328, 1330 (1994). *See also Chadwick v. Caulfield*, 834 A.2d 562, 566 (Pa.Super.2003) (quoting *Commonwealth ex rel. Butler v. Rundle*, 407 Pa. 535, 180 A.2d 923, 924 (1962) (citation omitted)) (indicating that petition for writ of habeas corpus "lies to correct void or illegal sentences or an illegal detention, or where the record shows a trial or sentence or plea so fundamentally unfair as to amount to a denial of due process or other constitutional rights, or where for other reasons the interests of justice imperatively required it"). "The writ, if issued, directs the restraining authority to produce the person and state the 'true cause of the detention.'" *Chadwick*, 834 A.2d at 566 (quoting 42 Pa.C.S.A. § 6504).

■ ¶ 11 To determine whether the relief Appellant seeks is governed by the law of habeas corpus or whether it is subsumed by the PCRA, we must "test whether [Appellant] had a remedy under the PCRA," and "we must consider the PCRA

on its face (*i.e.,* Appellant's judgment of sentence became final years before he filed the instant petition and he missed the grace period afforded to PCRA petitioners whose judg-

itself as applied to [Appellant's] case." *Peterkin,* 722 A.2d at 640.

■ ¶ 12 The PCRA provides:

[f]or an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis.

42 Pa.C.S. § 9542. To be eligible for relief under the PCRA, the petitioner must establish, *inter alia,* that:

the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

. . .

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

. . .

ments of sentence became final before the effective date of the 1995 amendment to the PCRA that instituted the mandatory timeliness provisions, *see Peterkin,* 722 A.2d at 641).

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S. § 9543(2)(i), (ii), (iv), (vi)-(viii). In the instant case, Appellant is not alleging that the truth-determining process underlying the 1990 convictions was undermined by constitutional violations or ineffective assistance of counsel. He does not challenge an interference with his right to appeal, the imposition of a sentence greater than the lawful maximum, or the jurisdiction of a tribunal. He does not assert the later discovery of exculpatory evidence. Indeed, none of the bases for relief under the PCRA address the unique situation presented in this case.

¶ 13 Accordingly, our examination of the purpose of the PCRA and the bases for relief provided under the PCRA lead us to the conclusion that Appellant's claim that his substantive due process rights were violated by the lengthy delay in the execution of his sentence is not a claim that is cognizable under the PCRA but, rather, sounds in habeas corpus. Appellant is not challenging the legality or discretionary aspects of the actual sentence imposed, and he is not claiming innocence of the 1990 crimes. Rather, he is challenging the legality of his detention or committal to prison and subsequent parole following the 9–year period in which he was mistakenly at liberty on his appeal bond. The PCRA does not provide relief for this type of claim. Rather, Appellant's plea for relief sounds in habeas corpus and, therefore, we now proceed to the merits of Appellant's substantive due process argument within the habeas corpus framework.

¶ 14 Appellant argues that his return to prison and subsequent placement as a parolee after 9 years of inaction on the appeal bond from the 1990 conviction, "shocks the conscience" thereby violating his substantive due process rights, especially because, as Appellant claims, he was not at fault for the delay. "Article I, Section 9 of the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution guarantee a defendant the right to due process of law.... [T]he due process provision of the Pennsylvania Constitution does not provide greater protections than its federal counterpart." *Commonwealth v. Louden,* 569 Pa. 245, 803 A.2d 1181, 1184 (2002). "So-called substantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *Porter v. Karivalis,* 718 A.2d 823, 826 (Pa.Super.1998) (quoting *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).

¶ 15 In *Blair,* the case upon which the trial court relied in denying Appellant relief, the defendant (Blair) was convicted of aggravated and simple assault. *Id.* at 738. On February 24, 1993, the trial court sentenced Blair to 24 to 60 months' imprisonment and permitted Blair to post bond pending his appeal from his judgment of sentence. *Id.* at 739. While free on bond, Blair filed his notice of appeal, and our Court affirmed his judgment of sentence. *Id.* On May 31, 1994, this Court remanded the record to the trial court, and the record was received by the trial court on June 7, 1994. *Id.* However, because the bond papers were missing from the record, the court was under the mistaken impression that Blair was already serving his prison sentence when he actually remained free on his appeal bond. *Id.* Over two years later, in September of 1996, the Department of Corrections inquired into the

status of Blair's appeal. *Id.* The trial court investigated the matter and determined that Blair had not been incarcerated. *Id.* Following a hearing, the court ordered Blair to begin serving his sentence pursuant to Pa.R.A.P. 1763. Blair sought to dismiss or vacate the judgment of sentence and, following the denial of this motion and the denial of Blair's motion to reconsider, Blair appealed to our Court. *Id.* He argued that he was entitled to credit for time erroneously at liberty due to the court's failure to comply with Pa. R.A.P. 1763. *Id.* Our overall task was to determine if the court's oversight in failing to summon Blair to prison required Blair to be credited with the time he spent at liberty on his appeal bond. *Id.* at 740. Although we concluded that he was not entitled to such credit, our analysis included considerations of due process such as those raised in the instant case.

¶ 16 In *Blair*, we conducted a thorough examination of early cases from various jurisdictions, which applied the general common law rule that "where a final sentence of imprisonment had been rendered, delay in executing such a sentence did not preclude a subsequent enforcement of the sentence." *Id.* at 741. We noted that, in *United States v. Martinez*, 837 F.2d 861 (9th Cir.1988), the United States Court of Appeals for the Ninth Circuit recognized that "under common law a convicted person erroneously at liberty must, when the error is discovered, serve the full sentence imposed." *Blair*, 699 A.2d at 741 (quoting *Martinez*, 837 F.2d at 864). Nevertheless, we recognized, as did the *Martinez* court,

that "more current cases examine the totality of the circumstances surrounding the delay in execution of sentence." *Blair*, 699 A.2d at 741.[5] "Specifically, in cases dealing with delay in execution of sentencing, federal courts have examined alleged due process violations under the theories of waiver or estoppel." *Id.* We described these theories as follows:

> Addressing the waiver theory, the *Martinez* court declared that the government waives the right to incarcerate only "when its agents' actions are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in its aftermath." *Martinez*, 837 F.2d at 864 .... Under the estoppel theory, the *Martinez* court identified a four-part test requiring the following: the party to be estopped must know the facts; he must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; the party asserting the estoppel must be ignorant of the facts; and that party must rely on the former's conduct to his injury. *Martinez*, 837 F.2d at 865 ....

*Blair*, 699 A.2d at 741. "In addition to noting the waiver and estoppel exceptions to the common law rule ... *Martinez* ... recognized an additional exception/trend, specifically, the doctrine of 'credit for time spent erroneously at liberty.'" *Id.* Under this doctrine, "a convicted person is

---

5. One commentator characterizes the common law rule as draconian. In his words, "[t]he traditional rule applied by many courts was harsh: no matter how long a defendant spent at liberty, no matter how negligent the government had been, and regardless of whether the defendant brought the issue to the attention of the authorities, the defendant would be required to serve his full sentence.

In recent decades, most courts have recognized two doctrines to alleviate the draconian effect of this approach." Gabriel J. Chin, *Getting Out of Jail Free: Sentence Credit for Periods of Mistaken Liberty*, 45 Cath. U.L. Rev. 403 (footnotes omitted) (referring to doctrines of waiver/estoppel and the doctrine of credit for time erroneously at liberty).

entitled to credit against his sentence for the time he was erroneously at liberty provided there is a showing of simple or mere negligence on behalf of the government and provided the delay in execution of sentence was through no fault of his own." *Id.* at 742 (quoting *Martinez*, 837 F.2d at 865).

¶ 17 Despite recognizing the existence of these exceptions to the common law rule, we opted, under the circumstances in *Blair*, not to apply "an exception to the common law rule that a person erroneously at liberty must serve the **full** sentence imposed after the error is discovered." *Blair*, 699 A.2d at 743 (emphasis in original).[6]

¶ 18 In the instant case, Appellant asserts that he is not specifically relying on the exceptions of waiver or estoppel, *see* Appellant's brief at 11, and he does not present any argument with regard to the doctrine of credit for time erroneously at liberty. Rather, as indicated above, he predicates his argument on due process grounds alleging that the government's conduct shocks the conscience.

¶ 19 Fortunately, *Blair* also gives us some guidance in this respect because, although rejecting application of the waiver, estoppel, and credit exceptions under the circumstances of that particular case, the *Blair* court did engage in a four-prong due process analysis derived from *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[7] We described this four-prong test as follows:

In applying the *Barker* analysis, we must first determine whether the delay itself is sufficient to trigger further inquiry; if it does, the reason for the delay is examined, the defendant's assertion of his or her rights is examined, and, finally, any resulting prejudice to the defendant is considered.

*Blair*, 699 A.2d at 745. *See also Commonwealth v. Still*, 783 A.2d 829, 832 (Pa.Super.2001) (indicating that due process analysis requires considerations of length of the delay, reason for the delay, "the defendant's timely or untimely assertion of his rights," and "any resulting prejudice to the interests protected by his ... due process rights"). We now apply the *Barker* test to the facts of this case.

¶ 20 With regard to the first prong of the *Barker* analysis, we find that the delay of nine years itself is enough to trigger further inquiry. *See Blair*, 699 A.2d at 745 (concluding that delay of over two years was sufficient to trigger further inquiry). Additionally, we find that the extreme length of this delay weighs in Appellant's favor. *See Commonwealth v. Greer*, 382 Pa.Super. 127, 554 A.2d 980, 984 (1989) (concluding that 7½ year delay in sentencing defendant weighed in his favor under this prong of the *Barker* analysis).

¶ 21 With regard to the second prong, *i.e.*, the reason for the delay, we have said that "a deliberate attempt to delay should be weighed heavily against the government while '[a] more neutral reason such as negligence ... should be weighted less

---

**6.** Specifically, the *Blair* court, after discussing the exceptions, stated *"in this case we choose* not to apply an exception to the common law rule...." *Blair*, 699 A.2d at 743 (emphasis added). Thus, it appears that we did not reject these exceptions outright but, rather, found that they did not apply under the facts in *Blair;* and, as noted above, we also asked for a directive on this issue from the Supreme Court with regard to setting a "definitive rule

of criminal procedure addressing the dilemma presented by the circumstances herein." *Id.* at 742–43

**7.** "It is well settled that the same analysis used to examine speedy trial claims which arise pre-trial is used to examine due process claims which arise post-sentencing." *Blair*, 699 A.2d at 745 (citations omitted).

heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'" *Blair*, 699 A.2d at 745–46 (quoting *Commonwealth v. Glover*, 500 Pa. 524, 458 A.2d 935, 938–39 (1983)). In *Blair*, we concluded that the government's delay was not deliberate but, rather, resulted from its lack of knowledge that Blair remained free on his appeal bond because the bond papers were missing from his record. *Blair*, 699 A.2d at 746. We stated that "[s]uch negligence will be weighed less heavily." *Id.*

¶ 22 The instant case presents circumstances quite different from those in *Blair* with regard to this prong of the test. In *Blair*, the court took action *the first time* it recognized the issue of Blair's period of mistaken liberty. Contrastingly, Appellant had several contacts with the criminal justice system both in Allegheny and Westmoreland counties during his period of mistaken liberty. Yet, despite the opportunities the courts had to address the outstanding question of whether Appellant served his 1990 sentence, they repeatedly failed to do so, *even after* recognizing that a question existed about the matter.

¶ 23 Specifically, Appellant's most recent arrest and conviction occurred in Allegheny County in 1996 on a drug possession charge. N.T. Hearing, 1/27/03, at 21. Despite Appellant's outstanding 1990 sentence, the district attorney offered Appellant a "plea disposition quickly" (a sentencing option similar to ARD), apparently without recognizing that the 1990 sentence had not been served. *Id.* at 21–22. On September 3, 1996, the Department of Corrections sent a letter to the same judge who presided over the 1996 case, explaining that their records indicated that Appellant remained free on the appeal bond from his 1990 sentence and asking that the judge's staff investigate the mat-

ter and determine whether Appellant was still on bond or discharged and released. However, no record exists that any action was taken by the court at that point and, consequently, Appellant continued to remain free on his appeal bond.

¶ 24 Appellant also had multiple contacts with the Westmoreland County criminal courts in 1994 and 1995 for drug-related charges. *Id.* at 6. He was sentenced to concurrent terms of five years' probation for these crimes, *id.* at 7, but apparently the court did not recognize any issue with regard to the 1990 conviction in Allegheny County. Then, in 1999, the Westmoreland County Court revoked Appellant's probation, following a DUI conviction, whereupon the court ordered preparation of a presentence report. *Id.* The presentence investigator recognized that Appellant was convicted in 1990 and that he had been released pending appeal. *Id.* at 11. She included this information in the report as well as noting that there remained an outstanding question with regard to whether the 1990 sentence had been served. *Id.* Although she investigated the matter, she "did not find any evidence ... that the sentence was served." *Id.* at 12. Despite her report to the Westmoreland County Court, authorities still failed to take any action at that time with regard to the 1990 sentence. Indeed, there is no evidence of record that the courts pursued any further inquiry into the matter or took any other action on the matter, and Appellant testified that he was not aware of the information contained in the presentence report. N.T. Hearing, 11/4/02, at 60.

¶ 25 Thus, despite recognizing that the question of whether Appellant served his 1990 sentence remained outstanding, the courts nevertheless consistently failed to investigate and address the matter until it was finally brought to the attention of Judge Bigley almost a decade after we

remanded the record on direct appeal. Accordingly, the second factor of the *Barker* test weighs heavily against the government and is what primarily distinguishes this case from *Blair,* where the court addressed the problem as soon as it was recognized.[8]

¶ 26 With regard to the third prong, *i.e.,* the defendant's assertion of his rights, the *Blair* court found that "Blair asserted his due process right only after the trial court ordered him to appear for sentencing." *Blair,* 699 A.2d at 746. Similarly, Appellant did not assert his rights until after he was finally committed; however, in *Blair* we further stated: "While we question Blair's assertion that he did not know that his sentence had been affirmed, we must assume that this is why he refrained from asserting any claim before that time." *Id.* We make the same assumption in the instant case, as there is no evidence that Appellant was ever given notice that his judgment of sentence on the 1990 conviction was affirmed until he was arrested on the bench warrant issued by Judge Bigley in 2002.

¶ 27 Indeed, by the time of the first hearing on this matter on November 4, 2002, Attorney DeFazio had purged his record in Appellant's 1990 case and could not remember whether he had notified Appellant or Appellant's mother that the Superior Court had affirmed Appellant's judgment of sentence. Appellant testified that he was not notified by any source that his judgment of sentence had been affirmed by our Court, that our Supreme Court denied his petition for allowance of appeal, or that he had to turn himself in to commence serving his sentence. N.T. Hearing, 11/4/02, at 43, 47, 59–60. When asked what he thought the outcome of his appeal was, Appellant stated, "After so many years I thought the appeal was won. Just went on with my life." *Id.* at 43, 47. Indeed, there is no evidence that Appellant attempted to conceal his whereabouts during his period of mistaken liberty, as he did not change his name or residence. *Id.* at 43–44. Similarly, Appellant's mother, who had posted her residence as surety on the appeal bond, testified that she too did not hear from the bond agency regarding the status of her son's bail and that Attorney DeFazio never told her of the outcome of her son's appeal. N.T. Hearing, 11/4/02, at 65–66. Since no action was taken on the appeal bond and because Appellant's mother became preoccupied with her husband's serious multiple health issues during the intervening period, she made no further inquiries. *Id.* at 67–68. Based on this record, we cannot fault Appellant for asserting his due process rights for the first time following his 2002 committal on the 1990 sentence. This factor therefore does not weigh against him.

¶ 28 The fourth prong of the *Barker* test requires us to consider any resulting prejudice to the defendant. *Blair,* 699 A.2d at 745. In *Blair,* Blair argued that, during the two-year and four-month time period he was mistakenly at liberty due to the trial court's failure to comply with Rule 1763, he had become "gainfully employed, secured his own apartment, purchased an automobile, and was continuing his education when ... all of his gains 'were ripped away from him ... when he was required to return to jail[.]'" *Id.* at 739. We stated:

> We acknowledge the fact that Blair failed to be incarcerated because of an error not his own. Further, Blair did

---

8. In this same vein, we note that Pa.R.A.P. 1763 places no burden on the convicted person to turn himself in to the court following affirmance of his judgment of sentence on appeal. Rather, according to the plain language of the rule, it is the court's responsibility to call the convicted person to appear following remand of his record.

nothing to hinder the order to commence service of sentence; he did not flee, did not conceal his identity, lived and worked in the Western Pennsylvania area, and had attended the Community College of Allegheny County. Blair claims he did not have knowledge, during the time period in question, that his judgment of sentence had been affirmed by this court. While we sympathize with Blair's plight, we conclude, however, that these factors do not and cannot nullify any portion of Blair's sentence of imprisonment. We will not allow the court system's inadvertent error to cancel any part of Blair's punishment for the crimes for which he was justly convicted and sentenced. Society has an interest in knowing that its criminals are serving the punishment to which they have been sentenced, regardless of an unintended delay or negligent error attributable to the government. The fact remains that, regardless of the delay, Blair has not served the time he was so ordered to serve. Blair's "erroneous time at liberty" was spent, by his own admission, engaging in the normal activities of a member of free society. Considering Blair's accomplishments in maintaining employment and pursuing educational goals, the argument could be made that he actually benefitted from his time at liberty. Indeed, it is difficult to accept Blair's plea of "enormous prejudice" in light of these circumstances. *Id.* at 743 (footnote omitted). This passage reveals certain key considerations the *Blair* court used in denying relief. First, it described the government's error as "inadvertent." The instant case, in contrast, illustrates a situation in which the government continually failed to address the problem, despite its opportunities to do so, during an extended period of years. Thus, the *Blair* court was really addressing the second prong of the *Barker* test when it noted the government's lack of

blameworthiness. Second, the *Blair* court interjects a policy argument into their prejudice analysis by noting society's interest in having convicted criminals serve the sentences imposed upon them. Although we fail to see how this impacts a prejudice analysis, we note that this policy is not implicated in the instant case because, at this point, Appellant has already served his minimum sentence on the 1990 conviction and is presently out on parole, his debt to society being essentially paid at this point. The third point, most relevant to Blair's prejudice argument, is that the *Blair* court considered Blair's time at liberty to have benefited him rather than prejudiced him because he did become productive during that time. However, the *Blair* court also notes that "[t]he law is not uniform with respect to whether or not a prisoner's conduct after he is mistakenly released is a relevant consideration in determining credit for time at liberty." *Id.* at 743 n. 10. In all, the prejudice analysis in *Blair* provides little guidance in the instant case.

¶ 29 Our Appellant argues that the court's delay in committing him on the 1990 conviction caused him prejudice because, "vital evidence" such as witnesses and scientific evidence are now missing, and the trial transcript from the 1990 conviction is "lost and cannot be re-created." Appellant's brief at 11. The record supports Appellant's assertion that the 1990 transcript is missing and we accept Appellant's proposition that, due to the inordinate delay perpetuated by the court's continuous course of inaction, certain vital evidence may be stale or missing and that certain witnesses would be unavailable or would have difficulty recalling this case. Indeed, even if Appellant could file a timely PCRA petition at this point, it would be difficult to assess any potentially meritorious issues under these circumstances.

¶ 30 Thus, overall, we find that the *Barker* factors weigh in favor of Appellant's due process violation claim and that the government's act in returning Appellant to prison following an inordinate delay attributable to the government's course of recognizing, then ignoring, the outstanding question of whether Appellant served his 1990 sentence, constitutes grounds to discharge Appellant from his sentence at this time.

¶ 31 For the foregoing reasons, we reverse the order denying habeas corpus relief and order Appellant discharged from his sentence in this case.

¶ 32 Order reversed.

¶ 33 Judge ORIE MELVIN files a dissenting statement.

DISSENTING STATEMENT BY ORIE MELVIN, J.:

¶ 1 I respectfully dissent from the Majority's Opinion discharging Appellant from the sentence imposed on his 1990 drug conviction on the basis that his substantive due process rights were violated.

¶ 2 Upon review of the factors set forth in *Barker v. Wingo, supra,* I disagree that Appellant has been prejudiced as a result of the delay in recommitment. The record reflects that while Appellant was mistakenly at liberty on his appeal bond, he was charged with and convicted of other offenses in Westmoreland and Allegheny counties. Furthermore, even if Appellant could file a timely PCRA petition, it appears that he would raise the same suppression claim which was already addressed on direct appeal by a panel of this Court. Therefore, the fact the trial transcript is missing and that certain evidence may be stale is of no moment when the suppression claim has been previously litigated. Therefore, in the absence of any prejudice, I disagree that Appellant should be granted *habeas corpus* relief and be

discharged from his sentence in this case. Accordingly, I respectfully dissent.