J-A32025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.K.-D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.E.D. | : | No. 2265 EDA 2016 |

Appeal from the Order Entered June 21, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  2013-29598

BEFORE:   DUBOW, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY RANSOM, J.:          **FILED FEBRUARY 24, 2017**

Appellant, A.K.-D. ("Mother"), appeals from the order dated June 21, 2016, denying Mother's request for modification of the custody order.  After review, we affirm.

This matter has been the subject of contentious litigation, and the relevant facts are well known to the parties.  We adopt the following background statement from the trial court's opinion:

> [A.K.-D.] (hereinafter "Mother") and [D.E.D.] (hereinafter "Father") are the parents of one minor child [I.D.] (D.O.B. 12/24/11).  Mother resides in York, Pennsylvania[,] and Father resides in Indianapolis, Indiana.  [I.D.] has been diagnosed with Autism Spectrum Disorder (hereinafter "ASD") and requires services to meet developmental targets.

---

[*] Retired Senior Judge assigned to the Superior Court.

On September 8, 2014[,] the [c]ourt entered a Custody Order which granted both parties shared legal custody as well as shared physical custody of [I.D.] on alternating months.

On March 30, 2015[,] Mother filed an "Emergency Petition for Contempt" and a "Petition for Special Relief." Mother's "Emergency Petition for Contempt" alleged that during Father's custodial time, [I.D.] was experiencing weight loss and was not receiving consistent services which were causing him to regress developmentally. In her "Petition for Special Relief," Mother requested that Father's custodial time be reduced to one week per month. Father filed an "Emergency Petition for Special Relief" on June 30, 2015[,] and alleged among other things that: (1) the Goddard School, where the parties initially agreed [I.D.] would be enrolled, was not providing the necessary amount of therapy to [I.D.]; (2) [I.D.] be allowed to remain in the Applied Behavioral Center (ABC) while in Indiana so that he could continue to receive intensive therapy; (3) they cooperate with ABC's suggested treatment, and (4) Mother refrain from giving [I.D.] excessive amounts of Pediasure unless he refused to eat or there was a medical necessity. Father further alleged that Mother was being unduly difficult about working with him to set up services for [I.D.] in Indiana.

On July 10, 2015[,] Mother filed an "Answer to Father's Emergency Petition for Special Relief" denying his allegations. Mother then filed a "Motion for Reconsideration" on July 16, 2015[,] arguing that the [c]ourt failed to consider and/or hear testimony regarding the issues raised in her "Emergency Petition for Special Relief." Mother further alleged that the [c]ourt had failed to consider [I.D.]'s special needs and requested that the [c]ourt reconsider the custody schedule that was in place. On July 13, 2015[,] the undersigned entered an Order finding that Father's June 30, 2015[,] "Petition for Special Relief" was not an emergency noting that the parties were scheduled to appear before her for a protracted half-day hearing on July 20, 2015.

The [c]ourt held hearings on this matter on July 20, 2015, November 17, 2015, March 15, 2016, and March 16, 2016. At the November 17, 2015[,] hearing, the [c]ourt denied Mother's request to enter an Interim Custody Order until the conclusion of the trial in March explaining that it was important that both parties continue to have parenting time with [I.D.] until a final custody determination was made. On November 25, 2015, Mother file a "Petition for Reconsideration" of the November 9,

2015[,] Order which denied Mother's request for an Interim Order. On January 15, 2016, the undersigned entered an Order denying Mother's "Motion for Reconsideration of November 19, 2015[,] Order Denying Interim Order."

On February 9, 2016, Mother filed another "Petition for Contempt" alleging that Father failed to comply with the educational and therapeutic model that the parties had agreed upon. Father filed an "Answer and Counterclaim to Mother's Petition" on February 25, 2016[,] denying all material allegations found in Mother's Contempt Petition. In his Counterclaim, Father sought counsel fees due to what he alleged were Mother's constant filings of frivolous claims. Mother filed her "Answer to Father's Answer and Counterclaim" on March 11, 2016. In her Answer, Mother continued to allege that Father was intentionally refusing to provide [I.D.] with consistent services in Indiana and was willfully in contempt of the September 8, 2014[,] Custody Order. Additionally, Mother denied all allegations with respect to Father's Counterclaim for counsel fees.

At the conclusion of the trial on March 16, 2016, and upon agreement of the parties, the [c]ourt entered an Interim Order which provided, in part, that each party would propose two to three educational consultants to evaluate [I.D.]. The [c]ourt would review [I.D.]'s evaluation prior to making a final decision regarding custody. On April 19, 2016[,] the [c]ourt entered an Order requiring the parties to share equally the cost of [I.D.]'s educational evaluation. On April 20, 2016, pursuant to a Court Order, Maria Vetter was appointed to perform an educational evaluation of [I.D.]. However, on or about May 27, 2016, the undersigned received correspondence from Mother's attorney stating that neither party could afford to pay their share of the educational evaluation and requested that the parties be relieved of the [c]ourt's April 20, 2016 order. The parties requested that a custody determination be made based on the testimony taken before the [c]ourt. Thus, on June [21], 2016[,] the undersigned entered a Custody Order which essentially reaffirmed the custody schedule from September 8, 2014. Mother now files the instant appeal.

Trial Court Opinion, 8/8/16, at 1-3; **see also** Custody Order, 06/21/2016.

Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court issued a responsive opinion.

Mother raises the following issues on appeal:

I.   Did the court misapply the custody factors by failing to give more weight to the special needs of a four year old, non-verbal child on the autism spectrum, than the needs of a parent for equal custody time, by failing to consider the great distance of the parties' residences that are over 560 miles apart making equal custody time unrealistic, and failing to give the proper weight to the policy of keeping siblings together.

II.   Did the court fail to give the proper weight to the testimony of the child's neuro-developmental pediatrician with over 30 years of experience, who was the doctor who diagnosed I.D.'s special needs and saw him one week prior to testifying at trial, and instead gave substantial weight to a developmental pediatrician with less experience who had only seen that child once, for one hour, one year prior to the date she testified at trial.

III.  Did the court err in interpreting what consistency means for a non-verbal special needs child, when I.D.'s physicians and therapist all testified that children on the autism spectrum need extreme consistency in as much of their lives as possible, and that having a custody schedule that changes every four weeks with two entirely different approaches to treatment in two different states is harming I.D.'s potential for a neuro-typical life in the future.

IV.  Did the court err in failing to conclude the trial in a timely fashion, causing I.D. irreparable developmental harm by not being in a consistent program, allowing Father additional time to remedy his disregard for the court's orders, and causing the testimony of the Mother's witnesses to become stale and forgotten at the conclusion of the trial almost one year after the filing and eight months after the first hearing.

V. Whether the court showed bias against Mother for concluding that Mother is trying to take the child away from Father, when evidence shows Mother has complied with all terms of the current and past custody orders, conducts daily video conferences with Father, and has offered custody schedules more typical for long distance custody arrangements and special needs children to provide the consistency recommended by his developmental pediatrician and other therapist, and in spite of Father's continued contempt of the current order and all previous orders.

Appellant's Brief at 5-6 (unnecessary capitalization removed).

Initially, we address our jurisdiction to entertain this appeal. *See In re Miscin*, 885 A.2d 558, 561 (Pa. Super. 2005) ("We may examine the issue of appealability *sua sponte* because it affects the Court's jurisdiction over the case."). It is well settled that "an appeal properly lies only from a final order unless otherwise permitted by rule or statute." *G.B. v. M.M.B.*, 670 A.2d 714, 717 (Pa. Super. 1996). Nevertheless, this Court has recognized that "there are important policy reasons to analyze the finality of custody orders differently from other civil court orders." *Id.* at 718 (noting, for example, "the significant, important and immediate impact upon the welfare of children"). Considering these policy reasons,

a custody order will be considered final and appealable only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties.

*Id.* at 720.

- 5 -

The recent hearings in this matter commenced after Mother filed a petition for contempt as well as a petition for special relief. The hearings were conducted over 18 months. During this period, Mother filed a second petition for contempt. Following several interim orders, the court issued the June 2016 Custody Order. However, the trial court never ruled expressly on the petitions for contempt. Mother noted this oversight in her Rule 1925(b) statement. In its responsive opinion, the court acknowledged its error and requested remand to address the matter of contempt.

In our view, the trial court's failure to rule on Mother's petitions for contempt does not affect our jurisdiction to entertain Mother's appeal. To the contrary, the court entered the Custody Order following several hearings on the merits. Further, based upon its extensive findings of fact, as well as its comprehensive analysis of the relevant, statutory factors, we conclude that the trial court intended that the Custody Order constitute a complete resolution of the custody claims between the parties. *Id.* Accordingly, we will proceed to review the merits of Mother's appeal. Subsequently, however, we shall also remand this matter to the trial court for resolution of Mother's contempt motions.

Our standard of review with regard to a custody matter is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we

must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations

omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

*E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015).

Section 5328(a) provides as follows:

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

This Court has further explained as follows:

> When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant Section 5328(a) factors. ***E.D. v. M.P.***, 33 A.3d 73, 80 (Pa. Super. 2011). "**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). . . . The record must be clear on appeal that the trial court considered all the factors. [***E.D., supra*** at 81.]

***A.V. v. S.T.***, 87 A.3d 818, 822-23 (Pa. Super. 2014).[1]

Mother's first three issues essentially challenge the weight of the evidence supporting the court's findings. ***See*** Appellant's Brief at 16-33 (asserting that the court failed to give "sufficient weight" to certain factors); 33—38 (asserting that the court failed to give the "proper weight" to her expert testimony); 38-43 (asserting that the court ignored the testimony of her experts). As explained in ***M.J.M. v. M.L.G***, 63 A.3d 331 (Pa. Super. 2013):

> The Custody Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated

---

[1] We have clarified that the Section 5328(a) factors are not required to be addressed where the modification does not impact the form or type of custody, such as where the court is dealing with a discrete and ancillary issue. ***See S.W.D. v. S.A.R.***, 96 A.3d 396, 401-03 (Pa. Super. 2014); ***M.O. v. J.T.R.***, 85 A.3d 1058, 1062-64 (Pa. Super. 2014)

factors. 23 Pa.C.S.A. §§ 5323(d), 5328(a). … [T]here is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations.

*Id.* at 336 (internal citation and footnotes omitted).

In the present case, the trial court weighed all of the Section 5328(a) factors prior to making its custody order. *See* Custody Order, Analysis, at 1-6 (not paginated); Trial Court Opinion at 3-14. It is clear that the court considered the child's special needs, the distance between the parties, sibling relationships, and both parties' expert testimony regarding treatment. *Id.* Mother is essentially asking this Court to re-evaluate the trial court's credibility determinations and re-weigh the evidence, which we will not do. *V.B. v. J.E.B.*, 55 A.3d at 1197. After careful review of the record, we determine that the trial court has properly weighed all the relevant factors set forth in Section 5328 and that it adequately articulated its reasons for its custody decision, which were fully supported by the record.

Mother's fourth issue is that the trial court failed to conclude the trial in a timely fashion and that this failure was prejudicial to her in that the testimony proffered by her experts was "stale." *See* Appellant's Brief at 44.[2] This claim is without merit. While there was a considerable delay between

_____

[2] Mother also suggests the delay afforded Father an undeserved opportunity to remedy his contemptuous behavior, yet Mother incongruously asserts that Father failed to do so. *See* Appellant's Brief at 44. We reject this argument.

the filing of Mother's petition and the court's final order, the trial court attributes the delay to Mother's witnesses, whose testimony took up a considerable amount of time. **See** Trial Court Opinion at 5. Further, it is evident from the trial court's opinion, as well as its original Section 5328 analysis, that the court carefully considered the testimony of all of the witnesses. **See, e.g.**, Trial Court Opinion at 5-8. There is simply no support in the record that the testimony of Mother's experts was rejected by the court as "stale."

In her fifth issue, Mother contends that the court was biased against her and requests that we remand for an unbiased trial judge to conduct further proceedings. **See** Appellant's Brief at 57.

> As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

**Chadwick v. Caulfield**, 834 A.2d 562, 571 (Pa. Super. 2003).

Here, Mother never filed a motion for recusal. Accordingly, we deem this claim waived. **See V.B. v. J.E.B.**, 55 A.3d at 1206 (finding waiver where father failed to request the trial court to recuse itself); Pa.R.A.P.

- 11 -

302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[3]

Order affirmed. This matter is remanded solely to address the Emergency Petition for Contempt and the Petition for Contempt, each filed by Mother. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2017

---

[3] Absent waiver, we observe that Mother's claim of bias is premised upon the trial court's adverse rulings. **See** Appellant's Brief at 47-56. However, adverse rulings do not establish bias. **Chadwick**, 834 A.2d at 571; **see also Arnold v. Arnold**, 847 A.2d 674, 680 (Pa. Super. 2004).